Argued January 24, affirmed April 17, 1957

# STATE OF OREGON *v.* WILLIAM LESTER SCHLEIGH
### 310 P. 2d 341

*Charles A. Telfer,* of Grants Pass, argued the cause for appellant. On the brief were William F. Johnson, Charles A. Telfer, and William M. Sloan, all of Grants Pass.

*Max L. McMillin,* of Grants Pass, District Attorney for Josephine County, argued the cause and filed a brief for respondent.

Before PERRY, Chief Justice, and ROSSMAN, BRAND and McALLISTER, Justices.

BRAND, J.

The defendant William Lester Schleigh was indicted, tried by a jury and convicted of the crime of wilfully and maliciously setting a fire. He now appeals. The indictment alleged that:

> "The said William Lester Schleigh on the 6th day of September, A. D. 1955, in said County of Josephine and State of Oregon, then and there being, and then and there acting and conspiring with one William Clarence Schleigh, did then and there unlawfully, maliciously, wilfully, and feloniously set fire to a certain place situated in said County and State, to-wit: the premises owned by Tim Garcia, from which fire may be communicated to forest, woods, timber, brush, slashing or cut-over lands or clearings, contrary to the statutes in such case made and provided, and against the peace and dignity of the State of Oregon."

The indictment was brought under a statute which reads as follows:

> "Any one who wilfully and maliciously sets fire to any forest, woods, timber, brush, slashing, cut-over land or clearing, or place from which fire may be communicated thereto, shall be punished upon conviction by imprisonment in the penitentiary for not more than two years." ORS 164.050.

The sufficiency of the indictment is not challenged. The first assignment of error is, in substance, that there was no proof of the corpus delicti. As will later appear, evidence was received to the effect that the defendant made a confession. Defendant relies upon the statute which provides, in part, "nor is a confession

only sufficient to warrant his conviction without some other proof that the crime has been committed." ORS 136.540.

Mrs. Ruth Davis was acquainted with the defendant. On 6 September "around four-thirty-five P. M." as she was driving down westerly on the Coyote Creek Road toward Wolf Creek, she saw the defendant on the Coyote Creek Road in a red pickup, with another person who was driving. The pickup was at the intersection of Coyote Creek Road and Highway 99. As she drove down the Coyote Creek Road to the point where she saw the defendant, she observed nothing, but when she drove back up that road at about five p. m. she saw a number of fires that had started in the dry grass along the road. When she saw the defendant at four-thirty, the pickup was in front of her. It pulled out across the highway and she thought it was turning around to come back up Coyote Creek Road. On cross examination the witness said the pickup stopped before entering the highway and "Swung across the highway, what I thought was a U turn."

Thomas L. (Tim) Garcia lives on the Coyote Creek Road in Josephine County, Oregon, east of Highway 99. On 6 September 1955 at about five p. m. he saw a red GMC pickup truck in the road, heard a car start, and saw it drive slowly up the road easterly, and he saw a fire burning in his field immediately behind the truck. There were two men in the truck which proceeded easterly on the road. After the car passed his place the witness saw another fire on the Whittaker place which is located easterly of the Garcia property, and which fire was also alongside the Coyote Creek Road. The fires were on both sides of the road and along its edge. The fire on the Garcia place was in

very dry grass on the shoulder of the road. The witness put the fire which was on his place under control, and then went to Wolf Creek to report the fire. On his return he went to the Whittaker place and assisted in the control of that fire. While at the Whittaker fire he again saw a red GMC pickup truck traveling down and westerly on the Coyote Creek Road. On that occasion he identified the defendant William Lester Schleigh and his father William Clarence Schleigh, who was also separately indicted. The witness was acquainted with both of them. The vehicle answered the same description as the one which he previously had seen going easterly. The Schleighs, son and father, stopped the truck, remained in it and talked awhile. When the witness first saw the red GMC pickup truck he did not see any other vehicles on the road. On Garcia's return from Wolf Creek there were some pickups on the road. He did not recall any GMC pickup coming up the road, however. The Garcia property is surrounded by forest land. The witness testified that he had seen the Schleighs down at the store at Wolf Creek in a similar GMC pickup. The fire on the Garcia place was "just burning in a little circle" when the witness arrived at the scene, and he saw the fire "directly behind the GMC pickup as it was leaving * * *" at that point. The fire extended about 18 feet south of the road and into the field before it was extinguished. The witness also observed other fires and smoke to the east when he was at the Whittaker place. The fires were in the same direction in which the pickup truck was going. There were nine such fires, including the two previously mentioned.

Witness Bert Cook, the fire warden at Wolf Creek, was notified of some fires at about four-fifty or four-fifty-five p. m. He went immediately up the Coyote

Creek Road, arriving at about "five-o-three", and saw the fire on the Whittaker place. Seeing smoke from another fire and being informed that there were others up along the road, he proceeded to the next fire a quarter of a mile up the road. At that time the witness saw defendant William Lester Schleigh and his father in a red GMC pickup parked by the fire. The warden took the license number of the vehicle. Defendant "didn't say a word. His father did all the talking." Witness was advised not to narrate what the father said. The name taken from the registration card by the warden was either William Clarence or William Lester Schleigh.

The warden testified that in his opinion if the Garcia fire had been allowed to burn it would have spread to the Garcia residence, the Whittaker residence, and up the hill to forest land. After investigating the other fires the warden went down to the head of Coyote Creek Road and found the defendant and his father, and arrested them. This testimony was corroborated by witness Joyce, special investigator for the State Board of Forestry.

Witness Ronchi saw the defendant and his father sitting in a red GMC pickup at about five-fifteen or five-thirty. They were watching a fire which was burning along the road a half or three-quarters of a mile up from the highway. At least seven fires were burning between the highway and two miles further up the road.

Witness Strong saw the defendant between five and six p. m. at the point where the Coyote Road leaves the Pacific Highway. Defendant was turning onto the highway. Witness observed no other red pickup truck.

Witness Brown was driving easterly up Coyote Creek Road at about five p. m. He saw a red pickup truck going westward toward the highway with two

men in it. After he passed the pickup he saw one small place burning. At the Stumbo place Mr. Brown saw vehicle tracks "where someone had come on to the road and then headed down the creek." He saw no other red pickup.

Officer Marion Hardy of the Oregon State Police was examined in the absence of the jury concerning an alleged confession made by defendant and was thereafter permitted to testify concerning it before the jury. The preliminary examination, and the examination before the jury, disclosed that no threats or inducements were made, that the confession was voluntary, and that defendant seemed to be all right except that he was nervous. The officer testified:

"A He advised me that his father and him were driving along the road and he had some wooden matches, and he would strike these matches and throw them out the window and he looked back to see if there was a blaze, which there was, and he advised that he set six fires, or seven fires, and one of them went out, wouldn't burn. Six fires actually were burning.

\* \* \* \* \*

"Q What, if anything, did the Defendant have to say to you at that time concerning how his father and he happened to be up there on the road?

"A He stated that his father had a peeve against the forest service in respect to that they take everything away, trees and animals, and they put nothing back.

"Q And that's why—

"A That's the reason for them setting the fires.

"Q Did he state anything to you concerning how he and his father happened to be up there that day on that road?

"A He stated that earlier in the day they had gone to Glendale together in his father's pickup, and he returned home after he had waited for his

father at Glendale, and then his father came home from Glendale and they went together and set these fires. The father drove and William Schleigh struck the matches and threw them out the window.''

In addition to the oral admissions and confession, a written confession was received in evidence. It is unnecessary to encumber the record with it. The writing stated that his father ''had been drinking and was mad'', * * * ''mad at the forest service people.'' Defendant's father wanted him to set some fires in the forest. They went up the road and set several fires and turned around at Stumbo's road (where the tracks had been seen). On their return they were stopped and were ''talked to by the forest service people and the state police officer.''

The defendant's father was called as a witness for the defense. He testified that he and the defendant went up Coyote Creek Road once only on 6 September and came back together. He fixed the time as ''probably three-thirty, four o'clock.'' He denied that either he or the defendant had set any fires.

■ Before stating our conclusion as to the sufficiency of the evidence we will consider the applicable rules of law. The statute on which defendant relies provides that a confession only is not sufficient to warrant a conviction without some other proof that the crime has been committed, but it does not say that the other proof that the crime has been committed must alone be sufficient to warrant a conviction. The confession and the other proof must of course show beyond reasonable doubt that a crime has been committed and that the defendant committed it.

■■ Defendant relies strongly upon *State v. Elwell,* 105 Or 282, 209 P 616. In that case a confession of guilt was introduced in evidence and the defendant was con-

victed. On appeal this court held that the trial court should have directed a verdict of acquittal because "No evidence was produced to prove that criminal act, except the confession of defendant." 105 Or 287. It was therefore held that the requirement of ORS 136.540 had not been satisfied. We quote with approval from the opinion of McCourt, J., as follows:

"In a prosecution for the crime of arson, the corpus delicti,—that is, that the crime charged has been committed by someone—consists of two elements: (1) That the building in question burned; and (2) that it burned as the result of the willful and criminal act of some person." 105 Or at 283.

We also agree that:

"* * * 'when a house burned and nothing appears but that fact, the law rather implies that the fire was the result of accident or some providential cause than of criminal design.'" 105 Or at 284.

However, other statements of the law by McCourt, J. must be viewed with caution. Only one member of the court concurred in that opinion. Two others concurred in the result only. Three judges concurred in a dissenting opinion by Burnett, C.J., from which we quote:

"* * * It is not required that the proof shall be sufficient to establish the guilt of the defendant beyond a reasonable doubt, for this would be to make confessions negligible. A fair and reasonable construction of the statute is, that there must be some proof tending to show that the crime has been committed, aside from and in addition to the confession." 105 Or at 291.

The three dissenters referred to the evidence of motive, and said:

"* * * All we hold in this case on that point is that such circumstances satisfy the injunction of

the statute that there must be some evidence of the commission of the crime, besides the defendant's confession." 105 Or at 295.

Thus the only statement of a rule of law concerning the sufficiency of motive as corroborative of a confession, which received the approval of as many as three judges, is found in the dissent.

In a second dissenting opinion BROWN J. quoted with approval from *People v. Jaehne*, 103 NY 182, 199, 200, 8 NE 374, 381, and numerous other cases which hold that:

" 'While the confession of the accused alone is insufficient to sustain a conviction for the crime with which he is charged, and other evidence of the corpus delicti is essential thereto, yet the confession may be taken into consideration in connection with such other evidence in establishing the corpus delicti.' "

In support of the opinions expressed in the dissents, we quote:

"Regarding the question of the necessity for evidence corroborating the confession of the accused in order that such confession may establish the corpus delicti, the authorities in this country are not harmonious, but the great weight of authority —almost an unbroken line—is to the effect that the uncorroborated confession of the accused is insufficient to establish the corpus delicti, but that, where corroborated, such confession may be admitted in evidence for the purpose of establishing the corpus delicti in a charge of felony." 1 Wharton's Criminal Law 470, § 361.

We observe that ORS 136.540 provides that a confession is insufficient "without some *other* proof that the crime has been committed." (Italics ours.) The

statute does not say "without proof", but, "without * * * other proof * * *."

In *State v. Howard,* 102 Or 431, 203 P 311, the court said:

"We take it that the corroboration is sufficient, if there is other evidence of the corpus delicti and of the agency of the defendant in the commission of the crime, * * *."

Again, in *State v. Henderson,* 182 Or 147, 184 P2d 392, 186 P2d 519, the court, speaking of OCLA, § 26-937 (now ORS 136.540) said:

"That section of our laws is satisfied when the state presents independent evidence of the corpus delicti: * * *." 182 Or at 190.

See also *State v. Weston,* 102 Or 102, 201 P 1083, where it is held that admissions by a defendant may afford some proof of the corpus delicti. And see *State v. Wilkins,* 72 Or 77, 88, 142 P 589.

■ We find ample evidence to establish the corpus delicti. The jury was entitled to assume that seven or eight fires do not all start by spontaneous combustion along both sides of a road and in no other place, all within about one-half hour. There is no evidence of fire caused by lightning. There was evidence that the fires sprang up immediately after the passing of a red pickup truck containing two men and that the two men were the defendant and his father. There was evidence of motive based on ill will on the part of the father, with whom the son was riding. There was evidence from which the jury could infer that there was no other GMC pickup on the road at that time which answered the description of the one in which defendant rode.

■ The situation differs materially from that found

in *State v. Elwell,* supra. We judicially know that many fires break out in homes through a number of causes, such as defective wiring, gas or oil stoves, etc., or through mere negligence. Eight fires do not suddenly spring up for two miles along one country road unless some human agency brings them there. Furthermore, it would be too credulous to believe that a systematic setting of fires could have sprung up without a deliberate plan to set them and thereby to violate the law. There is no merit in the first assignment of error.

Assignment of Error No. Two has been disposed of in what we have said concerning Assignment No. One.

■ By Assignment No. Three defendant contends that error was committed in admitting evidence of the fires other than the one on the Garcia property. The assignment is without merit. The setting of a series of fires was relevant on the issue of motive. *State v. Henderson,* supra. It is also admissible to prove a general scheme or plan and to negative inadvertence. *State v. Long,* 195 Or 81, 244 P2d 1033; *State v. Dennis,* 177 Or 73, 159 P2d 838, 161 P2d 670; *State v. Gillis,* 154 Or 232, 59 P2d 679; *State v. Burke,* 126 Or 651, 269 P 869; *State v. McClard,* 81 Or 510, 160 P 130.

Assignment No. Four raises the same question which was presented by Assignment Three.

We shall consider Assignments Five and Six together. By Assignment Five it is contended that:

"The trial court erred in refusing to permit the defendant to introduce evidence of his mental condition at the time he made the confession."

By Assignment of Error No. Six it is contended that:

"If the Court finds that Assignment of Error No. Five is not well taken, and that notice is re-

quired under ORS 135.870 in order to place in evidence the testimony of the doctors to rebut the confession of the Appellant, then notwithstanding the fact that Appellant did not give such notice, it was an abuse of the trial court's discretion to not permit such evidence to be placed before the jury.''

■ The defendant offered in evidence a duly certified copy of an order made in the circuit court in a civil procedure whereby William Clarence Schleigh was appointed guardian of the person and estate of his son William Lester Schleigh, who is the defendant here. The order was made by Judge Millard who also tried the pending case and knew the facts. The order was made upon application of the father and mother of this defendant and with the consent of this defendant. It recites:

"That William Lester Schleigh * * * is suffering from a moderate degree of mental deficiency and is in need of a responsible person to control his person, earnings and other estate."

The order was made on 14 June 1955. After a long discussion in the absence of the jury the court held that the exhibit was inadmissible. Concerning the admissibility of the guardianship order, counsel for defendant stated, ''It is a matter of discretion on the part of the Court. We have always recognized that.'' The defendant thereby waived any right to claim that the court was required as a matter of law to receive the exhibit. In discussing the guardianship case Judge Millard said:

''* * * it was thought that the Defendant was weak and if we appointed his father as his guardian maybe we would be able to get him to abstain from liquor, because he seemed to commit his—His trouble seemed to arise at the time that he was

drinking. As I remember, there was a bad check charge.''

After the state had rested, counsel for defendant offered the testimony of doctors, saying:

"* * * Now their testimony won't go to a mental deficiency, they are going to testify that in their opinion he is suffering from what they call a constitutional psychopathic condition. It has nothing to do with intelligence. It has nothing to do with mental deficiency. It deals with a personality quirk, constitutional psychopathic personality, and it will go only to rebut the confession. * * *''

Counsel added:

"For one thing, they will testify that a man suffering from a constitutional psychopathic personality is a pathological liar, that he doesn't lead, but possibly that he can be easily led into saying or doing anything, that he does it to glorify himself, like a man that walks into a police station and confesses to an unsolved murder to get his name in the paper. * * *''

Again counsel stated:

"Your honor, this isn't being offered as a defense to the accusation. * * *''

The court permitted the defendant to take the testimony of Dr. V. A. Coverstone in the absence of the jury and as an offer of proof. The doctor testified that he interviewed the defendant on 21 November, two days before the trial. The interview lasted one hour. His testimony was as follows:

"* * * I made a diagnosis of his being what we call a constitutional psychopath, a constitutional psychopathic personality. * * * mental cases which are characterized by inability to distinguish right from wrong. They are constantly in some kind of trouble, never seem to learn by experience, al-

ways the story once they are apprehended, having gotten into some trouble, is 'Well, I'm sorry, I did it.' 'Well, why did you do it?' 'I don't know.' The truth is not in them, either by direct falsehood or omission. The condition is not acquired. Apparently it is hereditary, or at least most cases are. * * *''

The doctor testified further that he found nothing in the examination that led him to believe that defendant was "mentally deficient." We quote again from the doctor's testimony:

"THE COURT: Would you say he was mentally defective, doctor?

"A That's a different question. This definition of constitutional psychopathic personality, it seems as though there is a functional capacity that these people do not have.

"THE COURT: Well then, you would have to say he is mentally defective, wouldn't you?

"A Well, I expect. It's a matter of definition, there.

* * * * *

"A * * * this condition that we are outlining in general, you detect it immediately by the individual's bearing. You can't exactly say how you know, but you are suspicious right away. They usually won't look at you, they squirm in their seats and are obviously avoiding, evading, or directly falsifying. They do not know the difference between right and wrong. They simply do not have that trait. And in various degrees."

Defendant at the interview told the doctor that he was discharged from the army after a hearing before a medical board and was "in constant trouble." Again we quote from the testimony of Dr. Coverstone:

"Q You say a person such as that does not have the ability to distinguish right from wrong; is that correct?

"A That is correct. That comes into the definition of this condition and again, as I have said, in the definition there are degrees, and circumstances interfere with that, too.

"Q So such a person lacking the ability to distinguish right from wrong would have to be classified as a mental defective then, would he not?

"A Yes. I expect it would come, you would have to say that."

The statute provides:

"All matters of fact tending to establish a defense to the charge in the indictment or information * * * may be given in evidence under the plea of not guilty; provided, however, that where the defendant pleads not guilty and purposes to show in evidence that he was insane or mentally defective at the time of the alleged commission of the act charged, he shall, at the time he pleads, file a written notice of his purpose; and provided, further, that the defendant may file such notice at any time thereafter but before trial when just cause for failure to file the same at the time of making his plea is made to appear to the satisfaction of the court. If the defendant fails to file any such notice he shall not be entitled to introduce evidence for the establishment of such insanity or mental defect; provided, however, that the court may, in its discretion, permit such evidence to be introduced where just cause for failure to file the notice has been made to appear." ORS 135.870.

Counsel for defendant reiterated that the evidence was offered only to attack the credibility of the confession. The trial court rejected the offer of proof as made by the testimony of the expert witness.

In its simplest form the question for decision is whether expert testimony is admissible to prove that a defendant is a "*pathological* liar" in order to prove

that he lied ·when he confessed that he committed a crime and when the undisputed testimony is that the confession was voluntarily made without fraud, duress, or inducement of any kind. (Emphasis ours.) It may be added that the offer of proof did not purport to indicate that a pathological liar *always* lies. The ruling of the trial court was that the statute ORS 135.870 applied. After hearing prolonged argument, the court said:

> "* * * in the Court's opinion, this is nothing more or less than coming in the back door to attempt to get in evidence that is expressly prohibited by the statute, unless notice of insanity is given, or notice that the Defendant intends to produce evidence as to being mentally defective."

As appears above, the defendant offered testimony to the effect that defendant was legally insane under the "right and wrong test" which is firmly established in this state. *State v. Jensen,* 209 Or 239, 296 P2d 618; *State v. Layton,* 174 Or 217, 148 P2d 522; *State v. Wallace,* 170 Or 60, 131 P2d 222; *State v. Butchek,* 121 Or 141, 253 P 367, 254 P 805; *State v. Murray,* 11 Or 413, 5 P 55.

We will now consider the applicability of ORS 135.870 to the facts of this case. We disregard for the moment the last two provisions in ORS 135.870 which vest in the trial judge discretionary power to relieve a defendant from the requirement that he serve a written notice of intention under the conditions specified. The first portion of the statute requires the giving of written notice of defendant's intention to show in evidence that he was insane or mentally defective at the time of the alleged commission of the act charged. The question for decision is one of narrow scope. It may be stated thus: Did the statute require that the

defendant give notice of his purpose to show in evidence that he was insane or mentally defective at the time of the alleged commission of the act charged, the purpose being to show such insanity and mental defect by the opinion evidence of experts, and the offer of such evidence being made to show that the defendant was a constitutional psychopathic personality or congenital liar and thereby to attack the credibility of a confession made approximately three hours after the time of the alleged commission of the act charged? The question relates to a permanent condition of insanity or mental defect and is not concerned with evidence of temporary insanity or mental defect brought on by an accident or event which occurred after the time of the commission of the act charged but before the confession, nor are we concerned with an offer to show that, at the time of the confession, defendant was under the influence of narcotics or liquor. Evidence offered for such purpose is not within the purview of the statute. If the same evidence which was offered here for the purpose of overcoming the effect of the confession made at eight p. m. had been offered to show defendant's mental condition at five p. m. of the same day, the statute requiring notice would certainly have applied. Thus the question is in reality whether the statutory requirement can be evaded by offering the evidence for its bearing on the eight o'clock confession when the condition of insanity and mental defect shown was of such a nature that if it existed at eight p. m. it must also have existed three hours earlier. It must be remembered also that there was undisputed evidence that the confession was not induced by threats or inducements and was voluntary. In view of the fact that the mental condition described in the offer of proof was of a permanent or constitutional character, it

would be sophistical to argue that the only purpose was to prove insanity at eight p. m. but not at five p. m. We hold that this particular offer of proof necessarily manifests a purpose to show insanity and mental defect at both hours of the same day, whether counsel admits it or not.

■■ Defendant appears to argue that the category "all matters of fact tending to establish a defense to the charge" (ORS 135.870) includes only such matters of fact as tend to show that defendant was legally insane under the so-called right and wrong test at the time when he in fact did the act charged. We quote the following from his brief:

> "* * * There is no claim that the act was done by the accused but is to be voided on the ground of lack of intent due to insanity or mental deficiency. The proof is—the testimony is going to be tendered solely and directed solely to the proposition that the confession which is now in evidence can be refuted. * * *"

The statute cannot receive the narrow construction which the defendant suggests. The history of the act is significant. Until the enactment of Chapter 18 of Laws of 1937 our statute merely provided that:

> "All matters of fact tending to establish a defense to the charge in the indictment other than those specified in the third subdivision of section 13-840, may be given in evidence under the plea of not guilty." 1 Or Code Ann (1930), § 13-845.

In 1937 the legislature adopted verbatim the following portions of Section 235 of the Code of Criminal Procedure of the American Law Institute and added them to the section just quoted:

> "Where the defendant pleads not guilty and purposes to show in evidence that he was insane or

mentally defective at the time of the alleged commission of the offense charged, he shall * * * *file a written notice of his purpose. If the defendant fails to file such notice he shall not be entitled to introduce evidence tending to establish such insanity or mental defect. * * *" (Emphasis ours.)*

It is reasonable to assume that the legislature in appropriating that language intended to achieve the result envisioned by the Code. That Code contemplated the receipt of evidence under a plea of not guilty. It contemplated receipt of evidence of mental defect under such plea and mental defect may or may not amount to insanity. The one purpose, clearly expressed in the Code, was that notice should be given of purpose to show mental defect under a plea of not guilty and that if notice is not given defendant shall not be entitled to introduce evidence tending to establish such mental defect. How then can it be argued under the Code or under our statute that the provision for notice applies only when offered to show a legal affirmative defense to an act which has been done? With us, legal insanity is in the nature of an affirmative defense, the burden of proof being upon the defendant. ORS 136.390; *State v. Wallace,* 170 Or 60, 131 P2d 222; *State v. Riley,* 147 Or 89, 30 P2d 1041.

■ There is in addition to the affirmative defense of insanity the conventional defense of not guilty. The statute does not refer to affirmative defenses only. It provides that all matters of fact *tending* to establish a defense to the charge may be given under a plea of not guilty. Mental defect not amounting to legal insanity may "tend" to establish the defense of not guilty within the meaning of ORS 135.870. The word "defense" is frequently used in two different meanings; one, the affirmative defense, i.e., insanity, or two, defensive matter tending to disprove the charge.

In *State v. Wallace,* supra, we referred to insanity as a "defense", meaning an affirmative defense, but we made it clear that ORS 135.870 imposed the duty to give notice whether the defendant purposed to show insanity as an affirmative defense, or on the other hand, purposed to show either insanity or mental defect defensively to overcome the evidence of guilt. In that case defendant was convicted of first degree murder. He gave no notice of intent to show insanity or mental defect. It was contended that defendant was entitled:

> "to introduce evidence of insanity notwithstanding the provision of the statute, and it has been urged that even if the defendant was not entitled to introduce evidence of insanity as a defense, nevertheless he was entitled to introduce such evidence for the purpose of showing an absence of deliberation, premeditation and specific intent, and for the further purpose of aiding the jury in determining the punishment, whether death or life imprisonment. * * *" 170 Or at 72.

The trial court refused to permit the defendant to add a plea of insanity during the trial. The conviction was affirmed. This court said:

> "The Colorado statute and those of most of the states requiring a special plea of insanity are clearly limited in their purview to a situation in which insanity is to be urged as a defense. The Oregon statute is not so limited. It clearly applies to cases in which the defendant purposes to show insanity as a defense (with us an affirmative defense). But it also applies when insanity is to be employed not as a defense but to reduce the degree or mitigate the punishment. By its terms, notice is required where the defendant 'purposes to show in evidence that he was insane or mentally defective at the time of the act.' There is nothing in the Oregon statute which limits its application to cases in which in-

sanity is to be employed for the more important purpose of acquittal but which excludes from its application cases in which insanity is to be employed for the lesser purpose of mitigation. In this aspect the Oregon statute resembles the Ohio statute requiring notice of intention to prove an alibi. It is a requirement of reasonable notice of intention to prove defensive matter. The decision sustaining the alibi statute is persuasive here." 170 Or at 104.

Again we quote:

"Neither the Model Code nor the Oregon statute makes any reference to insanity as a defense, but both are directed to the *exclusion of evidence* of insanity unless notice is given or good cause shown. The Model Code provides that upon failure to file such notice defendant 'shall not be entitled to *introduce evidence* tending to establish such insanity or mental defect.' (Italics ours.) The Oregon statute provides that he shall not be entitled to *introduce evidence* for the establishment of such insanity or mental defect. Again, our statute employs the phrase 'insanity or mental defect,' the apparent purpose of which was to make sure that the statute should require the giving of notice where mental disease is to be shown, even though that disease or mental defect is not of such a character as to constitute 'insanity' as defined by the law. There is no more procedural hardship in requiring notice, when insanity is to be shown to negative premeditation or to mitigate punishment than there is when it is offered as a defense." 170 Or at 106.

See *People v. Troche,* 206 Cal 35, 273 P 767.

In the Wallace case we said:

"The wisdom of the provisions of the Model Code prepared by a group of profound specialists in criminal law is apparent. If notice should be required only when insanity is presented as a defense, a defendant having conclusive evidence of insanity could present his entire case, embellished

with the testimony of alienists applying the right and wrong test, without giving any notice, by merely asserting that it was offered to disprove deliberation or the like. With such evidence in the record it would be a bold judge indeed who would refuse to submit also the issue of insanity as a defense. Such a construction of our statute would nullify all the benefits for which it was passed." 170 Or at 108.

In *State v. Jensen, supra,* 209 Or 239, 296 P2d 618, this court cited *State v. Wallace* with approval. See 296 P2d at 629.

■ While it is true, in the case at bar, that the evidence was not offered to prove that the defendant was insane when he set a fire, it was offered to prove with other evidence that defendant was not guilty. The only reason for attempting to destroy the effect of the confession by introducing the offered testimony was to aid in showing that defendant was not guilty, and thus to present a "defense" or to aid in such presentation. The offer of proof was clearly an offer to prove legal insanity, to-wit, inability to distinguish right from wrong or at least to prove that the defendant was "mentally defective." Can it reasonably be said that the statute prohibits such proof without notice given when it is admitted that defendant did the act charged but permits it when defendant denies that he did the act *and* seeks to employ the same evidence to disprove the charge in another way? Such a construction would in effect emasculate the statute. The statute does not say that notice is required if he purposes to show insanity or mental defect at the time that he *did the act charged.* On the contrary, it refers to the time of the *alleged commission.* The rule governs the offer of evidence whether defendant did or did not do the act

charged, a matter which cannot be determined until the jury returns a verdict. It is expressly provided that if defendant fails to file any such notice he shall not be entitled to introduce evidence of such insanity or mental defect. The prohibition is absolute regardless of why the offer is made, subject of course to the provisos later to be considered.

■ Counsel for defendant argues that evidence may be incompetent for one purpose but competent for another, and under such circumstances it is admissible for the latter purpose, subject to the duty of the court, to limit the purpose for which it may be considered. 20 Am Jur 252, Evidence, § 263. That authority, however, states:

> "* * * such evidence is admissible for the latter purpose unless the risk of confusion by the jury is so great as to upset the balance of advantage or receiving it. * * *" 20 Am Jur 253, Evidence, § 263.

The very wording of the statute prohibits admission of the evidence, for such evidence is declared inadmissible for any purpose if notice is not given. The statute clearly states a rule of public policy of this jurisdiction, a policy requiring fair notice of intent to prove insanity or mental defect. If we were to hold that a defendant can avoid the plain intent of the law and introduce without notice the very evidence of insanity, which it is the purpose of the law to exclude unless notice be given, we would find courts instructing on legal insanity and then telling the jury that even if they find defendant legally insane they cannot acquit on that ground because no notice was given, but can only consider such condition on other issues.

■ We now consider the applicability of the statute

from a different angle. Assuming that the offer of proof did not involve any inference of insanity under the right and wrong test, it certainly did amount to a showing that defendant was mentally defective. Proof of mental defect is not necessarily any proof of legal insanity amounting to a complete defense for an act done. It may be relevant to show a morbid propensity or irresistible impulse which is not complete defense. *State v. Wallace,* supra; *State v. Hassing,* 60 Or 81, 118 P 195. It may be relevant merely to show improbability of the existence of deliberation or premeditation or specific intent, or in mitigation to reduce murder to manslaughter or the like. The recent work in mental disorder as a criminal defense enumerates the states which require notice of intention to defend on the ground of insanity. They are Florida, Iowa, Michigan, Oregon, Utah and Vermont, and perhaps Arkansas. See Weihofen, Mental Disorder as a Criminal Defense, pp 358-9. Examination of the statutes of those states shows that in each case the requirement of notice applies only to proposed proof of insanity. 23 Florida Stats Ann, § 909.17; 56 Iowa Code Ann 598, § 777.18; 25 Mich Stats Ann 497, § 28.1043-4; 8 Utah Code, § 77-22-16 (1953); Vermont Stats, §§ 2400, 2401 (1947); 4 Ark Stats Ann, § 43-1301 (1947). Other statutes are cited and discussed in *State v. Wallace,* supra. None resemble that of Oregon. Only the Oregon statute includes a requirement of notice of purpose to show mental defect. Those statutes which require notice only of intent to prove insanity either contain no language expressly forbidding the introduction of evidence or prohibit the introduction of evidence to establish the insanity or to ''establish such defense.'' Under such statutes it may be reasonably argued that the legislative purpose was merely to prohibit evidence as a

defense to the crime, i.e., as a complete defense to a proven or admitted act.

■ Only the Oregon statute employs the language of the Model Code of Criminal Procedure prepared by the American Law Institute and requires notice, not alone of purpose to show insanity as a defense, but also of purpose to show mental defect, which is not a "defense" unless it rises to the point of legal insanity. This provision distinguishes the Oregon rule from that of other states and from common-law decisions, and we cannot avoid the conclusion that if defendant fails to file any such notice he shall not be entitled to introduce evidence of such *mental defect*. ORS 135.870. Whatever the rule may be concerning the introduction in evidence of otherwise relevant conduct by a defendant which may tend to show mental defect, it is clear that the introduction of expert opinion evidence for the sole purpose of showing mental defect is barred by our statute unless notice is given or good cause for failure is shown.

■ Entirely aside from the provisions of ORS 135.870 there are other potent reasons for a holding that there was no error in excluding the offered testimony. The danger of confusion on the part of the jury is illustrated in the recent case of *State v. Jensen*, supra, decided 2 May 1956. In that case the charge was "felony murder". Notice of intention to prove insanity or mental defect was duly given. Experts testified that defendant was a psychopathic personality. Evidence of both state and defense showed that such a personality is characterized by emotional instability and antisocial behavior, but "he has no mental impairment which deprives him of the ability and power to distinguish right from wrong." This analysis of the psychopathic personality is in direct conflict with that given

by the local physician, Dr. Coverstone of Grants Pass. The learned discussion of the "psychopathic personality" in the recent work by Weihofen also contradicts the testimony of the witness in the pending case to the effect that one having a psychopathic personality is unable to distinguish right from wrong. See pages 22 and 123 of Mental Disorder as a Criminal Defense, by Weihofen. It was with reference to such situations that this court in *State v. Jensen*, when discussing a requested instruction, was moved to quote from *State v. Wallace*, supra, as follows:

"* * * we cannot 'constitute ourselves a psychiatric board to explore the hidden mysteries of the mind,' but must limit ourselves 'to the difficult application of the rules for the determination of "responsibility".' "

*State v. Humphrey*, 63 Or 540, 128 P 824, involved a charge of first degree murder. The act was committed in 1911, many years before the passage of ORS 135.870 which requires notice of insanity or mental defect. The case has never since been cited by this court on the point to which we now have reference. There being no statutory requirement of notice, the defense introduced evidence that the two defendants were below average grade of intelligence and were in the habit of assenting to any statement made in their presence. Other evidence was offered to show that one of the defendants had a weakness of mind evidenced by a propensity to confessions of which he was innocent. In modern terminology, the evidence was offered to prove the defendant had a psychopathic personality. On appeal from a conviction, this court said:

"* * * A confession is admissible as an exception to the general rule against hearsay testimony. When one has been admitted in evidence,

the way is open for the defendant to show that he made no such confession. He may also give evidence aliunde tending to establish his innocence of the crime charged or to overcome the evidence given against him by the prosecution. In our judgment, however, it will not avail him to say in effect to the jury:

" 'However true it may be that I made the confession introduced in evidence against me on this trial, nevertheless I am in the habit of making false statements in such matters, and therefore you must not believe this alleged confession.'

"In any event, the argument would apply only to the weight to be given to such a confession, and not to its admissibility. The attitude of the defendants on this branch of the case was to use second-hand heresay testimony with respect to George's statements as self-serving declarations, and then to enter upon a collateral inquiry concerning all the homicides thus detailed. It would have confused the issue, and have been an unprofitable and irrelevant investigation. The court committed no error in excluding it." *State v. Humphrey,* 63 Or at 554.

While not on "all fours" with the pending case, it aptly indicates the dangers incident to the receipt of such evidence. The offered evidence in the pending case purports to show a tendency to lie. It does not purport to show any ratio of probability that the defendant in the case would lie against his own interest or confess to a crime which he did not commit. It tended to show only that such a person as the defendant might lie by making a false confession.

Defendant cites 2 Wharton's Criminal Evidence in support of the proposition that

"the circumstances surrounding the making of the confession are admissible as bearing on the weight to which the confession is entitled. For this purpose the jury may, among other circumstances, also con-

sider the physical and mental condition of the confesser, * * *.'' 2 Wharton's Criminal Evidence, § 644, p 1080.

The only case cited concerning the admissibility of evidence of the mental condition of the confessor is *People v. Kircher,* 309 Ill 500, 141 NE 151. That case is clearly distinguishable. Evidence was offered to show that at the time of the confession the defendant was under the influence of morphine, a temporary condition which had no relevancy as to whether defendant was a congenital liar. An inherited or permanent condition of insanity or mental defect is entirely different from a temporary condition induced by intoxication or narcotics.

Defendant cites *Ingles v. People,* 92 Colo 518, 22 P2d 1109, in support of his contention that the evidence of insanity or mental defect at the time he made a confession is admissible. In that case the statute provided that if one of the defenses be insanity, said defense must be pleaded orally. No reference was made to mental defect. Unlike the Oregon statute, it did not provide that:

"* * * If the defendant fails to file any such notice he shall not be entitled to introduce evidence for the establishment of such insanity or mental defect; * * *." ORS 135.870.

The Colorado court held that since defendant was charged with murder in the first degree he could introduce evidence of insanity or mental derangement short of insanity to reduce the grade of the crime from first to second degree murder. The Colorado court also said that when a confession is introduced the defendant has the right to show his mental condition.

"* * * For example, a defendant may introduce evidence that he was insane, or was mentally

deranged though not insane, or was intoxicated, or for any other reason was not in full possession of his faculties. * * *"

Owing to the difference in the charge and in the statute this case is clearly distinguishable. Furthermore the evidence does not show the nature of defendant's insanity. For all we know he may have been a raving lunatic when he made the confession. The peculiar danger of permitting evidence merely to show that defendant is a liar, congenital or otherwise, in order to minimize a confession, distinguishes the instant case from any which defendant has cited.

■ Defendant cites *State v. Blodgett*, 50 Or 329, 92 P 820, which holds that a defendant may show that when he confessed he was intoxicated. There was no statute requiring notice of mental defect when the case was decided. Furthermore, we do not think the words "insanity or mental defect" as used in the statute were intended to cover temporary aberation resulting from intoxication, drugs or the like.

Defendant relies upon *People v. Joyce*, 233 NY 61, 134 NE 836. In that case there was no statute requiring plea or notice of "mental defect" or forbidding evidence thereof if notice is not given.

Examination of many decisions discloses that the common-law courts acting in the absence of any statute frequently spoke of the right to show the mental condition of a defendant at the time of the making of a confession. In most instances the actual question related to his mental condition as influenced by duress, fear or hope of reward, and not to a permanent insanity or hereditary mental defect.

■ As we before indicated, this decision must be limited to the facts of the case. Specifically, it must be understood that under the statute the duty to give

notice of insanity or mental defect when offered merely to disprove the case of the prosecution, as in the case at bar, does not apply unless the mental defect is of such a character that proof of its existence as of the time to which the evidence is directed necessarily involves proof of insanity or mental defect at the time of the alleged commission of the act charged. No difficulty is incurred in this case, because evidence of a permanent and preexisting mental condition at eight p. m. does necessarily tend to prove the same condition three hours earlier.

In holding that the statute applied to this case in which mental defect was offered to overcome the effect of a confession, we deprive no one of the right to prove mental defect for that or any other relevant purpose. We merely say that if evidence is to be offered for such a purpose and under the circumstances here shown, notice shall be given as required by statute or good cause must be shown for failure to do so.

It will be observed that in an abundance of caution the Oregon Legislature liberalized the escape clause contained in the proviso in the section of the Model Code of the American Law Institute. The last sentence of that code reads as follows:

"* * * The court may, however, permit such evidence to be introduced where good cause for the failure to file the notice has been made to appear." Code of Criminal Procedure of the American Law Institute, § 235.

Reference to ORS 135.870 shows the incorporation of a double proviso, the first permitting notice after the time of plea, and the second, permitting the introduction of evidence of insanity or mental defect even if no notice was given, in either case, if just cause is

shown for failure to comply with the requirement of notice.

If in the pending case the defense had no reason to know that a confession was to be offered and had no reason or purpose to call expert witnesses to show insanity or mental defect until after the trial had commenced, it would appear that he could make a showing of just cause for failure to give notice and that the trial court would relieve him from the requirement and permit the evidence.

■ We are of the opinion that the trial court did not abuse its discretion in refusing to permit the defendant to introduced the proffered evidence of insanity and mental defect. No just cause was shown for relief from the rule. Finding no error, the judgment is affirmed.

PERRY, C. J., specially concurring.

I cannot subscribe to the conclusion reached by the majority, that the trial court was not in error in rejecting the defendant's offer to show that the defendant was mentally incompetent to make a confession.

I am of the firm opinion that the majority are giving too broad an interpretation of the insanity or mental defect proviso in ORS 135.870. (The statute is fully set forth in the majority opinion and is, therefore, not herein set out.) This statute in clear and unequivocal language permits the introduction of all material facts tending to establish a defense to a crime charged, and the proviso limits these facts, unless certain prescribed procedure is followed, solely to the introduction of facts relating to a mental condition of a defendant existing at the time of the commission of the act charged, which, if believed by the jury, would constitute a defense to the crime as charged in the in-

dictment; that is, this statute deals with defenses and the proviso deals with an insanity or mental condition that would be such as to exonerate a defendant in the eyes of the law of the crime charged, or would be such as would reduce the degree of the crime.

Certainly this statute does not contemplate the defective mental condition of a defendant, which, although established, would not constitute a defense. In this case no one could reasonably contend that proof of the fact that the defendant was a "pathological liar" would exonerate him in the eyes of the law for the commission of the crime of arson.

In my opinion, under this statute the fact that a defendant's mental condition is chronic does not make the evidence incompetent for the purpose of permitting a jury to evaluate the evidentiary weight to be given a confession, but does deny the defendant the right to have this evidence considered as a defense to the crime charged.

It is an established rule of law which needs no citation of authority that, although evidence offered may be inadmissible for one purpose, it may, nevertheless, be admissible for another, and the jury can then be instructed as to the extent and purpose to which they must consider this evidence in their deliberations. The fact that a jury might consider the evidence contrary to the instructions of the court certainly presents an unsound reason for its exclusion.

Nevertheless, I am of the opinion that the error of the trial court in refusing the defendant's offer of proof, although error, was not prejudicial. This for the reason that the defendant offered evidence by his father that the confession was not true because the father was with his son at the time the alleged crime was committed and no fires were started by the son.

Had the jury believed the evidence of the father they could not have believed the defendant was telling the truth when he made his confession.

I, therefore, concur in the result reached by the majority.

ROSSMAN, J., specially concurring.

I do not believe that *State v. Wallace,* 170 Or 60, 131 P2d 222, which Mr. Justice BRAND's decision mentions frequently, is applicable to this case. In all other respects I concur in his opinion.