Argued March 21, reversed and remanded for new trial April 11,
reconsideration denied by opinion July 5, petition for review
denied July 26, 1977

## STATE OF OREGON, *Respondent,*
*v.*
## THOMAS HENRY PITTS, *Appellant.*
## (No. C 76-07-10055, CA 7093)
562 P2d 562

Robert C. Cannon, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were James A. Redden, Attorney General, W. Michael Gillette, Solicitor General, and Al J. Laue, Assistant Attorney General, Salem.

Before Schwab, Chief Judge, and Lee and Richardson, Judges.

SCHWAB C. J.

## SCHWAB, C. J.

Defendant appeals from his conviction by a jury of arson in the second degree. ORS 164.315. Defendant's contentions on appeal are that the trial judge improperly admitted evidence of certain acts and statements by defendant.

On July 18, 1976, defendant lived in a house occupied by the Greiss family. At about 7 p.m. on July 18, defendant, who was drunk at the time, emerged from the house and commented to a neighbor, "I'll get even with them. I'll burn their garage down." At 8 p.m. that evening, and again at 10:30 p.m., defendant engaged in arguments with the Greisses, and was eventually ordered to leave the house. At that time defendant remarked to one of the Greiss children that he would "pay [them] back." At approximately 3 a.m. the next morning the Greiss's garage was set afire and was totally destroyed. The fire was started by the spilling of a gallon of gasoline in a trail from the garage which was then ignited. Shortly after the fire was discovered, defendant was seen running on a street in the neighborhood. Defendant later gave conflicting accounts as to where he spent the evening of July 18.

### I

Defendant first challenges the admissibility of evidence that on the afternoon of July 18 he and one of the Greiss children had gathered small mounds of grass and were setting them afire. Generally evidence that a person has engaged in certain conduct is not admissible to prove that he engaged in similar conduct at another time. *Karsun v. Kelley,* 258 Or 155, 482 P2d 533 (1971); *Carpenter v. Kraninger,* 225 Or 594, 358 P2d 263 (1960); *Union Central Life Ins. Co. v. Kerron,* 128 Or 70, 264 P 453 (1928). Though this rule and the exceptions thereto have most frequent application when the prosecution seeks to prove that a defendant has committed crimes other than that for which he is being tried, it is confined neither to "other-crimes"

evidence nor to criminal cases alone. *Brown v. Johnston,* 258 Or 284, 482 P2d 712 (1971). The rationale for excluding such evidence was stated in *State v. Manrique,* 271 Or 201, 531 P2d 239 (1975):

> "The fundamental rule of evidence is that in order to be admissible evidence must be relevant, i.e., have some probative value to prove some issue in a case, and that all relevant evidence is admissible unless it falls within one of the so-called 'exclusionary' rules of evidence. * * * It is equally well established that evidence may be rejected, although relevant, if its probative value is outweighed by various other considerations, including the danger of prejudice * * *.
>
> "For this reason it is the general rule in criminal cases that the state may not offer evidence that the defendant was guilty of other crimes in addition to the crime for which he is charged. Although evidence that a defendant has committed other crimes may have some probative value in that it may be 'more likely' that such a person committed the crime in question, it is generally recognized that the danger of unfair prejudice to the defendant outweighs any such probative value. * * * This is consistent with the general rule that evidence of other similar acts or transactions, including other acts of negligence, other contracts and other fraudulent representations, is not admissible to prove that on a subsequent occasion the same person engaged in a similar act or transaction * * *." 271 Or at 205-06.

Several exceptions to the general rule of exclusion have developed. Among these are those instances where the evidence of other acts is offered to establish motive, intent, identity, the existence of a common scheme or plan, the lack of inadvertence or where a complete account of the crime charged is otherwise impossible.[1] In each instance, however, the probative

---

[1] *State v. Guerrero,* 243 Or 616, 415 P2d 28 (1966) (motive); *State v. McClard,* 81 Or 510, 160 P 130 (1916) (intent); *State v. Hockings,* 23 Or App 274, 542 P2d 133 (1975), Sup Ct *review denied* (1976) (identity); *State v. Manrique,* 271 Or 201, 531 P2d 239 (1975) (common scheme or plan); *State v. Wm. Lester Schleigh,* 210 Or 155, 310 P2d 341 (1957) (lack of inadvertence); *State v. Broadhurst,* 184 Or 178, 196 P2d 407 (1948), *cert denied* 337 US 906 (1949).

value of the evidence offered must exceed the possibility of prejudice to the defendant or other incidental harm before the evidence is admissible.[2] *State v. Manrique,* supra.

■ The state contends that the evidence that defendant set the grass piles afire was admissible under the motive exception. In *State v. Hockings,* 23 Or App 274, 542 P2d 133 (1975), Sup Ct *review denied* (1976), we held that the admission of such evidence under the motive exception is improper unless the evidence establishes a direct and compelling reason for the second crime and that the second crime would not have occurred but for the earlier crime. *See generally State v. Walters,* 105 Or 662, 209 P 349 (1922). As the state makes no contention that the burning of the garage was in any way precipitated by or inextricably tied to the burning of the grass piles, the motive exception is not applicable.

The state next contends that the evidence of the grass fires is admissible to show that the garage fire was not accidental. However, no argument was ever made nor evidence offered so indicating. In fact, the uncontroverted evidence as to the manner in which the garage fire was set would have made such a contention fanciful at best.

Lastly, the state contends that the evidence of the grass fires was admissible to show the existence of a common scheme or plan. In order to fit within the common-scheme or -plan exception, the conduct on each occasion must not only seek to achieve a similar result, but also must establish

"\* \* \* *such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.*" *State v. Zimmerlee,* 261 Or 49, 53, 492

---

[2]In addition to the possibility of prejudice, the introduction of other similar acts may be unneccessarily time consuming, distracting or surprising to a defendant. *See* McCormick, Evidence 444, § 188 (2d ed E. Cleary 1972).

P2d 795 (1972), quoting 2 Wigmore, Evidence 202, § 304 (3d ed 1940). (Emphasis in original.)

Here the record is silent as to what purpose, if any, was served by the grass fires, though it seems most likely that they were designed more in the way of a childlike game than to achieve the same destructive result as the garage fire.[3] Further, the grass fires were set in the presence of others in the afternoon by touching lit matches to mounds of grass, and were apparently extinguished or allowed to be extinguished by the defendant. The garage fire, on the other hand, was set surreptitiously by igniting gasoline in the middle of the night, and was intended to demolish the garage. Thus, even though both incidents involved the use of fire, the concurrence of common features required by *State v. Zimmerlee, supra,* is not present.[4] As the evidence of the grass fires falls within none of the exceptions to the general rule of exclusion, it was improper for the evidence to be admitted.

## II

■ Defendant next challenges the admissibility of evidence that on the afternoon of July 18, when

---

[3] Although the defendant was 25, the record indicates that he was mentally dull if not clearly retarded.

[4] The state's brief cites only *State v. Wm. Lester Schleigh, supra,* and *State v. McClard, supra,* as support for the admissibility of the evidence of the grass fires. In *Schleigh,* the defendant had set a number of fires on land owned by one Garcia which abutted a country lane. The defendant claimed the fires were inadvertent. The court held that evidence that defendant had set similar fires by the same means at the same time as the Garcia fires on land adjacent to the Garcia land was admissible. In *McClard,* the court held admissible evidence that the defendant had engaged in a scheme of insuring and then burning certain goods. The relevance of *Schleigh* and *McClard* to this case is unexplained by the state, for the fires in each involve a much greater concurrence of purpose, time and manner than do those present here. If *Schleigh* and *McClard* are cited in an attempt to have us rule that in any arson case evidence that the defendant has lit other fires is automatically admissible, the record reveals no empirical basis for adopting such an exception. While it may be true that an exception to the general rule of exclusion of evidence of other similar acts might be appropriate in some cases involving pyromaniac individuals, *see,* e.g., State v. Start, 65 Or 178, 132 P 512, 46 LRA (ns) 266 (1913) (evidence of prior similar incidents with same victim admissible in case involving sex crimes), we decline to adopt such an exception on the record presented us here.

confronted by Mrs. Greiss, he denied setting the mounds of grass afire. The prosecution also introduced evidence that defendant at a later date admitted setting the grass fires. The only purpose for which defendant's denial that he set the grass fires could have been offered would be to show that since defendant had lied about setting a fire in the past, his plea of not guilty to the arson charge should be viewed cautiously by the jury. Such evidence would be admissible, *if at all,* only by way of impeachment. As is the rule with prior convictions of a defendant, such evidence may not be introduced in the state's case in chief. *See Smith v. Durant,* 271 Or 643, 534 P2d 955 (1975)—or at all where, as here, the defendant did not testify.

## III

■■ The improper admission of evidence constitutes reversible error only if the error is prejudicial to the defendant. Or Const. Amended Art VII, § 3; ORS 138.230. In *State v. Van Hooser,* 266 Or 19, 511 P2d 359 (1973), the court stated that an error is prejudicial unless (1) there is substantial and convincing evidence of guilt and (2) the error committed was very unlikely to have changed the result of the trial. It has long been thought that other-crimes evidence or evidence of prior similar acts of a defendant is so likely to blacken the character of the defendant in the minds of a jury that the improper admission of such evidence constitutes reversible error. In *State v. Bateham,* 94 Or 524, 530, 186 P 5 (1919), the court noted that:

"* * * [P]recedents teach that with certain exceptions, not here involved, it is prejudicial error to admit evidence tending to show the defendant guilty of any crime other than that charged in the indictment * * *."

*See also State v. Jensen,* 70 Or 156, 140 P 740 (1914); *State v. Dunn,* 53 Or 304, 99 P 278, 100 P 258 (1909).

■ Two factors here establish that the error in improperly admitting the evidence discussed above was prejudicial. First, the state's case was solely

[ 65 ]

circumstantial, *see State v. Hockings, supra,* and did not yield substantial and convincing evidence of guilt. Second, several of the state's witnesses not only testified that defendant had set the grass fires, but also, that he had later denied setting them. Thus, the jury's attention was forcibly drawn to the inadmissible evidence of the acts and of the false denial. The admission of the evidence constituted prejudicial error.

Reversed and remanded for a new trial.