Argued and submitted July 30, affirmed September 22, 1980

## STATE OF OREGON,
*Respondent,*
*v.*
## MICHAEL WAYNE JENKINS,
*Appellant.*

(No. C79-09-33016, CA 16535)

617 P2d 615

Thomas J. Crabtree, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

James C. Rhodes, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were James M. Brown, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Before Gillette, Presiding Judge, and Roberts and Campbell, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

The defendant appeals from his conviction for attempted murder, ORS 163.115 and 161.405, contending that the trial court erred both in admitting evidence of defendant's "other crimes" or bad acts, and in denying the defendant's motion for a judgment of acquittal. We affirm.

Late in the evening of June 28, 1979, the victim, a 68 year old woman, and her husband were sitting in their front room, watching television. The front door was open, although the screen door was closed and latched. The door bell rang and the victim approached the door. She saw a man, wearing a nylon stocking over his head and carrying a gun. The man instructed the victim to open the door, but instead she turned on the porch light and began to close the front door. The man yelled, "Lady, don't do that" and shot the victim in the shoulder. The victim managed to close and lock the front door, and to phone for help. She then collapsed. When the police arrived, they found both the victim and her husband, an elderly stroke victim, on the living room floor, unable to arise or to assist each other.

The victim was unable to identify her assailant. She could say only that he was relatively short, 5'3" to 5'5", that he wore a nylon stocking pulled over his head, and that he carried a gun, which she could not describe. The victim was not even sure whether her attacker was white or black.

However, other evidence indicated that one of a group of young black men, defendant and his compatriots, had shot the victim. Some of the victim's neighbors saw three young black men on the street at the time of the shooting. One neighbor heard the shot and saw the men running. Another neighbor, a young girl, saw one of the men go up onto the victim's porch and shoot the victim.

Eric Presley, a friend of the defendant's, testified that the three young men on the street at the time of the shooting were the defendant, Presley and

Phillip Bradford. Presley said that the defendant was the one who went up to the house and shot the victim. However, Phillip Bradford testified that he, and not the defendant, shot the victim. According to Bradford, the defendant was not present.

Despite the victim's inability to describe the gun used in the shooting, other evidence indicated that a gun introduced by the state at trial was, in fact, the gun involved in the attack. The gun introduced by the state was a Colt .22 caliber pistol with a long, 8 or 10 inch, barrel. The bullet which hit the victim was deformed when it later lodged in a wall of the victim's home. Because of the deformation of the bullet, the state's criminologist could state only that the bullet could have been fired by the gun introduced at trial. However, Eric Presley identified the gun as belonging to the defendant. He had seen the defendant with the gun on several occasions over a period of week. While Presley had not had a good view of the gun during the shooting, the neighbor girl who witnessed the attack noted the "long tip" of the gun. The police traced the gun back to an apartment occupied by Cora Mullenn, defendant's brother's fiance. Presley testified that he, defendant and Bradford went to Mullenn's apartment after the shooting.

The evidence summarized above suggested that either the defendant or Bradford shot the victim and that the gun introduced at trial was the weapon used. The "other crimes" evidence, challenged by defendant, tended to identify the defendant as the assailant and to link him to the gun.

The defendant complains of three specific items of "other crimes" evidence: (1) Eric Presley testified that he saw the defendant with the gun at one a.m. earlier on the day of the shooting. Presley also said that, some three hours after the shooting, he saw the defendant with the gun and wearing a nylon stocking mask. (2) Another witness, Linda Mittan, testified that, about three hours after the shooting, she saw the defendant with the gun introduced at trial, and wearing a nylon stocking over his head. She could

identify the defendant because he was relatively short and his hair was "processed" or straightened. The defendant is 5'5". (3) The last item of "other crimes" evidence, introduced by the state over defendant's objection, was a note written by the defendant to someone named Gary while the defendant was in jail awaiting trial. The note recites that defendant's "sister-in-law is not saying nothing." Cora Mullenn was engaged to the defendant's brother. At trial she denied hearing defendant say that he had shot a woman. The note also states that "the only one [defendant has] to worry about is Phil. [B]ut there [sic] no way I can get to him. [B]ut I am [sic] try to and if I do I going [sic] to get him to write a writing [sic] statement."[1] As we have noted, Phil Bradford testified at trial that he, and not the defendant, shot the victim.

"When approaching the question of admissibility of 'other crimes' evidence courts often state as a rule that this evidence is inadmissible unless it comes under one of the many exceptions to that particular exclusionary rule. To state such a general rule masks the complete progression of analysis in determining admissibility. It is more proper to first determine if the proffered evidence is relevant, without regard to its character, and then determine if there is some recognized exclusionary rule in the law of evidence which would nevertheless keep it out. The so called rule and its supposed exceptions are merely means of analyzing the relevance of the proffered evidence. It thus appears the rules and exceptions regarding other crime evidence are merely special aspects of the broad general problem of relevancy courts constantly face. *State of Oregon v. Long,* 195 Or 81, 244 P2d 1033 (1952). If the state establishes the evidence is relevant the defendant must establish that it has

---

[1] The note, as written, reads:

"gary. I received your note and I do understand were you coming from. but the part about my familey is dead. because my sister inlaw is not saying nothing that why thats dead. so if thats dead, the only one I have to wrry about is Phil. but there no way I can get him to him. but I am try to. and if I do I going to get him to write A writing statement. I got some people that hard him say that he shot the lady. so I am going to call them for my withnesses. but the attorney I got now is alright. he is going to call me and you down, and we will talk about it as rockey butt. so I will see you there. Mike."

prejudicial impact which outweighs the probative value that inheres in relevant evidence. *See State v. Manrique,* 271 Or 201, 531 P2d 239 (1975); *State v. Zimmerlee,* 261 Or 49, 492 P2d 795 (1972); *State v. Harrison,* 253 Or 489, 455 P2d 613 (1969); *Trook v. Sagert,* 171 Or 680, 138 P2d 900 (1943). As the Supreme Court stated in *State v. Manrique:*

'The fundamental rule of evidence is that in order to be admissible evidence must be relevant, *i.e.,* have some probative value to prove some issue in a case, and that all relevant evidence is admissible unless it falls within one of the so-called "exclusionary" rules of evidence. * * *" 271 Or at 205.'

"It may be noted the evidence must be relevant to establish some fact or inference the state is entitled to prove. For example, the state is not entitled to show the defendant has a propensity to commit a crime because he has been involved in other criminal activity or that he probably committed the crime because he is a person of general bad character. But the fact the evidence may tend to show these characteristics does not make it inadmissible if the evidence is also relevant and probative of some fact the state is entitled to show. The issue then becomes whether the probative value incorporated in legitimate relevancy exceeds the inflammatory nature of the other inferences the evidence may disclose." *State v. Hockings,* 29 Or App 139, 144-145, 562 P2d 587, *rev den* (1977).

■ Applying this analysis to the "other crimes" evidence introduced in this case, we hold that the evidence was admissible and that its relevance outweighed any prejudical impact.

■ We first consider the defendant's note. The note is described above and is set out in footnote 1 to this opinion. The relevance of this note is manifest. The defendant wrote the note while he was in jail awaiting trial. The note suggests that Cora Mullenn will not testify against the defendant, and that the defendant will try to silence Phil Bradford or have him confess to the shooting. The pivotal issue at trial was whether the defendant or Bradford shot the victim. Both Mullenn and Bradford testified for the defendant. The defendant's apparent efforts to obtain this

testimony through coercion are obviously relevant. The note was admissible; the trial court did not err in admitting it.

We next examine the testimony given by Presley that, prior to the shooting, defendant had the gun introduced in evidence at the trial, and the testimony by both Presley and Linda Mittan that, three hours after the shooting, defendant was wearing a nylon stocking mask and carrying the gun.

While there is nothing necessarily criminal in carrying a gun or wearing a nylon stocking mask, the rule limiting the admission of "other crimes" evidence

"'* * * is confined neither to 'other crimes' * * * or to criminal cases alone. * * * [The rule] 'is consistent with the general rule that evidence of other similar acts or transactions * * * is not admissible to prove that on a subsequent occasion the same person engaged in a similar act or transaction.' *[State v. Manrique, supra]*, 271 Or at 205-206." *State v. Pitts*, 29 Or App 59, 61-62, 562 P2d 562, *rev den* (1977).

We hold that evidence of the carrying of a gun in conjunction with wearing a nylon stocking as a mask is sufficiently suggestive of other criminal activity or "bad acts" to subject the disputed evidence to an "other crimes" analysis.

The state offered the testimony to prove identity, that is, to prove that the defendant was the person who, while wearing a nylon stocking mask, shot the victim.

Normally, the identity exception to the rule limiting introduction of "other crimes" evidence is limited to situations where "'* * * the prior crime and the crime for which defendant is presently on trial are so nearly identical in method as to earmark them both as being his handiwork. * * *'" *State v. Hockings*, 23 Or App 274 at 279, 542 P2d 133 (1975), *rev den* (1976). Here, the evidence indicated that, because of the length of the barrel, the gun was both distinctive and unusual. The neighbor girl who saw the shooting noticed the "long tip" of the gun. Presley identified the

gun as being the defendant's. The criminologist testified that the gun could have fired the bullet which hit the victim.

■     The evidence of defendant's possession of the gun both shortly before and after the shooting was relevant to show that the defendant was also in possession of this distinctive gun at the time of the shooting. The state did not attempt to prove that because the defendant carried *any* gun at other times, therefore he must have carried this gun on the night of the crime. *See State v. Hall,* 36 Or App 133, 583 P2d 587 (1978). Rather, the "other crimes" evidence linked the defendant to the specific, unusual gun used in the commission of this crime. The relevance of the evidence far outweighs whatever prejudice there may have been.[2] The trial court did not err in admitting the testimony.

■     Turning next to the evidence of the stocking mask, we note that there is nothing unusual in the wearing of a nylon stocking mask while committing a crime. However, in this case the evidence that defendant was wearing a mask some three hours after the shooting suggested considerably more than that defendant was a bad man prone to commit crimes. Rather, the evidence was relevant to prove that defendant, and not Bradford, shot the victim.

As we have noted, the evidence indicated that either Presley or Bradford shot the victim. The victim testified that her assailant had a nylon stocking pulled over his head. The evidence that defendant was wearing a stocking mask shortly after the shooting was relevant to prove that it was defendant who wore such a mask earlier and who shot the victim. The testimony was admissible. The trial court did not err in admitting the "other crimes" evidence.

---

[2] The trial court sanitized the evidence so as to minimize the prejudice. The state first presented its "other crimes" evidence in an offer of proof. During that offer, it was apparent that, when the defendant carried the gun both before and after the shooting and when he wore the stocking mask after the shooting, he was engaged in two robberies. The trial court limited the state's evidence so that the jury never learned of the robberies. The testimony placed before the jury indicated only that the defendant had the gun and that he wore the stocking.

■ The defendant also contends that the evidence of his guilt is insufficient and that the court erred in denying his motion for a directed verdict of acquittal. The evidence which we have described above is sufficient both to sustain the conviction and to answer this contention. *See State v. Krummacher,* 269 Or 125, 523 P2d 1009 (1974).

Affirmed.