Argued October 30, affirmed November 26, petition for rehearing
denied December 20, 1973, petition for review
denied February 12, 1974

## STATE OF OREGON, *Respondent, v.* DAVID JAY STERLING (No. 72-4895), *Appellant.*

516 P2d 87

*Robert C. Cannon,* Deputy Public Defender, Salem, argued the cause for appellant. On the brief was Gary D. Babcock, Public Defender, Salem.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and TANZER, Judges.

LANGTRY, J.

Defendant was convicted in a jury trial of two counts of first degree rape, ORS 163.375; one count of first degree sodomy, ORS 163.405; and two counts of sexual abuse, ORS 163.425, all of which occurred in one episode in Clackamas County on October 29, 1972. Venue was changed to Lane County. The trial judge sentenced for the rapes and sodomy, holding that the sexual abuse offenses merged in the others.

The only error assigned on this appeal is the allowance, over continued objection, of evidence concerning a similar sexual episode allegedly perpetrated by the same defendant on two other victims in the same area on November 8, 1972. The trial court heard the evidence of the November 8 episode *in camera* before ruling it was relevant and admissible.

Without going into the details of the evidence, which runs over more than 1,000 pages of transcript, the following similarities between the two episodes appear.

In each case, 10 days apart, two teenage girls, walking at dusk along suburban-type roads in the same area, were accosted by a mustached man on foot who pointed a handgun at them and forced them into roadside brush and trees.

In each case he went behind them with the gun in his right hand and, gathering their hair in his left hand, held their heads together as they were forced off the road.

In one case he forced them to completely undress; in the other he allowed them to keep their shirts on; but in both cases he required them to move on some distance past where their clothes were left before attacking them.

In each case he required them to lie down side by side and had intercourse with each; but, before requiring them to lie down, he placed his hands on or in their vaginas.

In one case he required one girl to commit oral sodomy on him; in the other he threatened it.

In each case he asked the girls their names, the schools they attended and whether they had had intercourse before; and in each case he admonished them to "relax" as he attacked them.

In each case when he left he told the girls to remain where they were for a time—10 minutes and 15 minutes.

All four girls positively identified the defendant (without a mustache), first in pictures, then in line-ups and then at the trial. The defendant was apparently apprehended as a result of an artist's drawing made from the girls' descriptions of him. The drawing was widely publicized. On a night when it was shown on television and defendant was "kidded" by fellow workers because it looked like him, the evidence is that he shaved off his mustache. The next day he disposed of an automobile that was identified by independent witnesses as one that was at the scene, driven

by a mustached man alone in the car, at about the time the second episode occurred.

Defendant's defense rested largely upon alibi and his claim of misidentification.

The trial judge, with reference to allowing the evidence of the November 8 episode, said to the jury:

"However, you may consider such evidence, if you find it believable, of other crimes where that evidence tends to show a novel means or particular manner used to perpetrate both crimes.

"This evidence may be used if you find it believable to establish * * * the identity of the accused, but it is not to be used by you to show any kind of criminal propensity."

This admonition was repeated two other times during the trial.

In ruling the evidence admissible the trial judge referred particularly to *State v. Zimmerlee*, 261 Or 49, 492 P2d 795 (1972). In that case the court said:

"* * * [T]he evidence of other criminal acts committed by the defendant may be received:

" 'To prove other like crimes by the accused so nearly identical in method as to ear-mark them as the handiwork of the accused. Here much more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The device used must be so unusual and distinctive as to be like a signature.' [McCormick, Evidence 326, 328, § 157 (hornbook series 1954).]

The exception is explained in 2 Wigmore on Evidence § 304, p. 202 (3d ed 1940):

" 'The added element, then, [in evidencing design or system rather than intent] must be, not merely a similarity in the results, but *such*

> *a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.'* " 261 Or at 52-3.

In *Zimmerlee,* the court said there was not enough similarity for the evidence of one of two crimes, one an assault and one a robbery, in both of which defendant used a gun and which occurred on the same night, to be received in a trial of the other. The court said that one had a "character of a taunting, open meanness and belligerency * * *" and the other "was conducted in a rather calm and casual manner, touched with a sense of grim humor * * *."

■ We are unable to see in the similarities we have described in the evidence in the case at bar anything like or unlike the frames of mind of a defendant thus described in *Zimmerlee,* and in this case trying to do so seems unimportant. We think that the facts in evidence show " 'such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations.' " (See the quotation from Wigmore in the *Zimmerlee* quote, supra.) Perhaps two, three or even four such similarities would not be enough to justify the evidence of the other criminal episode—that would depend on the similarities and the circumstances—but we are satisfied that the some 10 or 11 similarities here are enough. We think this is so even though there were a few dissimilarities in the *modus operandi,* for example, requiring removal of all clothing in one but not in the other episode.

The evidence was relevant as proof of the identity of the criminal. This relevancy was sufficiently important to overcome the prejudicial effect of the

evidence on defendant's case. *State v. Johnson,* 10 Or App 423, 427, 500 P2d 500 (1972).

■ The defendant argues that it is established in the law of Oregon that "it is error to admit evidence tending to prove that the defendant committed similar offenses upon a female other than the prosecutrix." (Citing *State v. Pace,* 187 Or 498, 507, 508, 212 P2d 755 (1949), and numerous other cases.) Such, of course, is the rule. The evidence may not be received to show defendant has a propensity for the crime. However, where the proof of identity of a defendant is involved and method of proceeding in similar crimes on others by the same defendant will materially aid in identity, an exception to the general rule applies. For example, in a sex offense case, *State v. Ewing,* 174 Or 487, 149 P2d 765 (1944), the court noted the same rule as that quoted from *State v. Pace,* supra, but qualified it by saying:

> "* * * In so far as evidence of misconduct with others *does not disclose the same unusual method,* it fails *pro tanto* to qualify as admissible * * *." (Emphasis supplied.) 174 Or at 502.

Evidence like that which we approve here has recently been admitted with approval in similar (but less strong against defendant) situations in surrounding states: *State v. Fierro,* 107 Ariz 479, 489 P2d 713 (1971); *People v. Wells,* 13 Cal App 3d 265, 91 Cal Rptr 460 (1970); *State v. Aguirre,* 84 NM 376, 503 P2d 1154 (1972); *State v. Sims,* 4 Wash App 188, 480 P2d 228 (1971).

Affirmed.