Argued July 24, reversed and remanded for a new trial
November 10, appellant's petition for reconsideration denied
December 17, 1975, petitions for review (2) denied
January 27, 1976

# STATE OF OREGON, *Respondent, v.* COLIN JOSEPH HOCKINGS (No. C 74-04-0993 Cr), *Appellant.*

542 P2d 133

*Phillip M. Margolin,* Portland, argued the cause for appellant. With him on the briefs was Stephen A. Houze, Metropolitan Public Defender, Portland.

*W. Michael Gillette,* Solicitor General, Salem, argued the cause for respondent. With him on the brief was Lee Johnson, Attorney General, Salem.

Before Schwab, Chief Judge, and Thornton and Lee, Judges.

THORNTON, J.

Defendant was convicted of four counts of murder. ORS 163.115. He appeals contending that the trial court erred: (1) in admitting evidence of a prior criminal trespass;[1] (2) in refusing to dismiss the indictment on the grounds that the state intentionally destroyed fingerprint evidence found at the scene of the crime; (3) in denying defendant's motion for judgment of acquittal; and (4) in instructing on felony murder.

---

[1] The state in its brief refers to the prior crime as a burglary, although defendant ultimately pleaded guilty to the reduced charge of criminal trespass.

We first consider the alleged error in admitting evidence of defendant's prior crime. At trial it was the state's theory that defendant was burglarizing the victims' home and decided to kill all the witnesses since one of the victims, having worked with defendant, would be able to identify him. Over objection, the state was allowed to prove that defendant entered another home 27 months before these murders were committed.

██ It is the general rule that the state in a criminal case may not offer evidence of the defendant's prior crimes as circumstantial evidence that he committed the crime for which he is on trial. *State v. Manrique,* 271 Or 201, 531 P2d 239 (1975); McCormick, Evidence 447, § 190 (2d ed 1972). Although such evidence is at least arguably relevant to show defendant's disposition to commit criminal acts, such proof is not permitted because the prejudice likely to follow outweighs the limited probative value. *State v. Manrique,* supra; McCormick, supra.

To this general rule, however, there are numerous exceptions. Our Supreme Court in *State v. Manrique,* supra at 206-07, recently commented on the rationale behind these exceptions:

> "Most, if not all, of the exceptions are based implicitly upon the idea that evidence of other crimes may be relevant for some purpose other than to show the probability that the defendant committed the crime for which he is being tried because he had also committed other crimes. See McCormick, supra at 447, § 190. Thus, these exceptions involve cases in which the courts recognize, in effect, that the probative value of such evidence when offered for such a purpose, outweighs the danger of prejudice to the defendant."

In admitting the prior crime evidence, the trial court relied upon two exceptions to the general ex-

clusionary rule, the identity and motive exceptions. Since these are the only exceptions of possible application to the case at bar, and the only two argued on appeal, we shall not consider the remaining exceptions.

■ The identity exception permits proof of the defendant's prior crimes to prove the identity of the perpetrator where the prior crime and the crime for which defendant is presently on trial are so nearly identical in method as to earmark them both as being his handiwork. *State v. Manrique,* supra; McCormick, supra. Our Supreme Court considered the scope of this "identity" exception in *Manrique,* supra at 207, and held that this exception is limited to situations where the two crimes were

> "* * * committed 'by the use of a novel means or in a particular manner,' so as to provide a proper basis for the inference that the person who committed the other crime was the same person who committed the crime for which he is being tried. [Citing cases.]"

The state sets out the following similarities between the two crimes which it argues are sufficient to earmark both as being the handiwork of the defendant and justify admission under the identity exception: (1) both were of occupied residences; (2) both entries apparently were made through garages; (3) both were committed in the early morning hours, near dawn; (4) both involved leaving the perpetrator's car near the scene; (5) both involved situations where defendant had been drinking; (6) both involved relatively minor actual thefts;[2] and (7) both involved only minimal efforts by the perpetrator to hide his face from the view of those in the neighborhood.

---

[2] In defendant's prior crime he took only a set of keys. Although the evidence in the case at bar is unclear, it appears that the killer took only a small amount of money, leaving behind credit cards and other valuables.

■ We are not persuaded by the state's list of common elements. Since so many burglaries of occupied residences happen daily, this similarity is too common to be entitled to consideration. That both crimes involved leaving the perpetrator's car near the crime scene appears at first to be significant, but when the exact locations are considered this similarity loses its impact. Defendant parked his car in the victim's driveway while carrying out his earlier crime, whereas witnesses in the case at bar placed the killer's car around the corner from the victims' residence. That both involved minor thefts is not significant either. In fact, it is to be expected that the killer, after eliminating all witnesses, did not take anything which could link him to the killings. Neither is defendant's drinking on the occasion of both crimes deserving of consideration because this too is so commonplace.[9]

■ That leaves three common elements entitled to consideration: (1) similar entry; (2) similar time; and (3) minimal effort to hide. These must be evaluated to determine their probative value, that is, the degree of reliability in inferring from these similarities that one person committed both crimes. This evaluation must take into account the dissimilarities as well as the similarities between the two crimes because any significant dissimilarities decrease the reliability of inferring a single perpetrator. *Cf., State v. Sterling,* 15 Or App 425, 429, 516 P2d 87 (1973), Sup Ct *review denied* (1974).

■ There are two dissimilarities between defendant's prior crime and the case at bar which must be considered. One is the length of time between the two crimes—27 months. While the length of time elapsed here alone is not sufficient reason to refuse to apply

---

[9] We assume here, without deciding, that the consumption of alcohol by the perpetrator of a crime is a "means" or a "manner" by which a crime is committed.

the "identity" exception, it does decrease the probative value of the similarities. *Cf., State v. Fleischman,* 10 Or App 22, 29, 495 P2d 277, Sup Ct *review denied* (1972). The other dissimilarity is the great difference in the amount of violence in the two crimes: the peaceful surrender and manner of defendant in the prior crime versus the brutal, hammer-murder of the four victims by the perpetrator of these killings.

When the overall resemblance between the two crimes is evaluated, taking into account similarities and dissimilarities, we are convinced that under the most recent exposition of the Oregon rule by our Supreme Court in *State v. Manrique,* 271 Or 201, 531 P2d 239 (1975) and *State v. Zimmerlee,* 261 Or 49, 492 P2d 795 (1972), by which we are bound, we have no choice but to hold that the admission of the evidence in question was improper. The facts here do not "provide a proper basis for the inference that the person who committed the other crime was the same person who committed the crime for which he [defendant] is being tried,"[4] *Manrique,* supra at 207, and the evidence of defendant's prior crime must therefore be excluded.[5] Even if there were no dissimilarities, we doubt whether the similarities present here would be sufficient in number and uniqueness to warrant admission under the exception. For cases where the common elements were sufficient to justify

---

[4] We decide here what we implied in State v. Sterling, 15 Or App 425, 429, 516 P2d 87 (1973), Sup Ct *review denied* (1974), when the similarities are commonplace their number must be greater:

> "* * * Perhaps two, three or even four such similarities would not be enough to justify the evidence of the other criminal episode—that would depend on the similarities and the circumstances—but we are satisfied that the some 10 or 11 similarities here are enough."

[5] It should be pointed out that State v. Manrique, 271 Or 201, 531 P2d 239 (1975), was decided by our Supreme Court subsequent to the trial of the case at bar in the circuit court.

admission, *see, State v. Sterling,* supra; *State v. Johnson,* 10 Or App 423, 500 P2d 500 (1972); *State v. Fuston,* 7 Or App 436, 490 P2d 1024 (1971), Sup Ct *review denied* (1972).

■ The state also argues that the prior crime evidence was admissible under the exception allowing such evidence to show motive. The state's theory at trial and argument on appeal were that defendant was discovered by his victims and chose to kill them after remembering that the victims of his earlier crime were responsible for his apprehension. We cannot extend the motive exception this far. Virtually any convicted criminal owes his prior conviction at least in part to evidence supplied by his victims. To admit this evidence under these facts would be a substantial step toward eliminating the general rule of exclusion.

■ Admission of prior crime evidence under the motive exception is not proper unless the prior crime provided a direct, compelling reason for the second crime. *See, State v. McDonald,* 231 Or 24, 361 P2d 1001 (1961), *cert denied* 370 US 903 (1962); *State v. Finch,* 54 Or 482, 103 P 505 (1909); *State v. Capitan,* 8 Or App 582, 494 P2d 443, Sup Ct *review denied* (1972). The prior crime evidence is inadmissible unless the later crime would not have occurred but for the earlier crime. *State v. Bailey,* 179 Or 163, 178, 170 P2d 355 (1946). Such is not the case here. At best, a prior burglary would provide a tenuous, indirect motive for such a brutal killing. There must be a stronger causal link between the two crimes than that theorized here. For instance, where the victim in a homicide case was to be called as a key prosecution witness in another case against the defendant, proof of defendant's involvement in the earlier crime was admissible to prove a motive for the murder. *State v. Capitan,* supra. Because such a causal link between the two

crimes is not present here, the prior crime evidence was not admissible under this exception.

Having determined that the trial court erred in admitting evidence of defendant's prior burglary, we must determine whether the error was prejudicial. An error is prejudicial unless (1) there is substantial and convincing evidence of guilt and (2) the error committed very unlikely changed the result of the trial. *State v. Van Hooser,* 266 Or 19, 511 P2d 359 (1973). In the case at bar the state's case against the defendant was based largely on circumstantial evidence, and evidence of defendant's prior crime was an important link in the state's chain of proof. Because of the circumstantial nature of the state's case, we hold that the result could arguably have been different had the prior crime evidence been properly excluded and that the admission of this evidence was therefore prejudicial and reversible error.

We next consider defendant's assignment of error regarding the destruction of "fingerprint evidence" found at the scene of the crime. At trial, Deputy Robert Zion of the Multnomah County Sheriff's office testified that of the approximately 90 "lifts" made at the crime scene, approximately 62 were destroyed after he and another investigator, Louis Rice, agreed that they had no identifiable characteristics. Neither of the officers obtained the approval of his superiors nor of the prosecutor's office before destroying the "lifts." Officer Zion stated that none of the lifts were identifiable finger or palm prints; that many were water spots and grease smudges which he recognized at the time of lifting to be of no value and which probably would be destroyed. He further testified that these spots and smudges were lifted only because of the seriousness of the crime. Under repeated re-examination and cross-examina-

tion Officer Zion testified that in his opinion none of the "lifts" destroyed had any useful purpose whatsoever and that all identifiable prints were preserved and accounted for.

Defendant argues that dismissal is required because the destruction of the 62 "lifts" thwarted his right to have them examined by an independent expert. Defendant bases this right to examine the 62 destroyed "lifts" on both the Oregon discovery statute, ORS 135.815, and the constitutional discovery requirements announced in *Brady v. Maryland,* 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963). He argues that since the state cannot disclose the destroyed evidence as required, dismissal is mandatory.

■ We first consider defendant's assertion that discovery is required by ORS 135.815, which provides in relevant part:

"Except as otherwise provided in ORS 135.855 and 135.873, the district attorney shall disclose to the defendant the following material and information within his possession or control:
"* * * * *

"(3) *Any reports or statements of experts,* made in connection with the particular case, including results of physical or mental examinations and of scientific tests, experiments or comparisons which the district attorney intends to offer in evidence at the trial.

"(4) Any books, papers, documents, photographs or *tangible objects*:

"(a) Which the district attorney *intends to offer in evidence* at the trial; *or*

"(b) Which were *obtained from or belong to* the defendant.

"* * * * *." (Emphasis supplied.)

A close reading of the above discovery statute re-

veals the error in defendant's reliance on it. The destroyed lifts would not be discoverable under subsection (3) because they were not "reports or statements of experts" required to be disclosed under that subsection. Neither would the lifts be discoverable under subsection (4) because they were not (a) intended to be offered into evidence nor (b) "obtained from or belong to the defendant." Since the lifts would not have been discoverable under ORS 135.815, their destruction is not offensive to it.

Defendant's argument that discovery of the lifts would be required by the *Brady* line of cases and that their destruction is therefore unconstitutional presents a more difficult question. *Brady* holds that the Due Process Clause of the Fourteenth Amendment requires the prosecution disclose to the defendant all evidence "favorable to an accused" which is "material * * * to guilt." *Brady*, supra at 87. A later case, *United States v. Bryant*, 439 F2d 642, 651 (DC Cir 1971), held that prior to trial the duty of disclosure operates as a duty of preservation on the theory that to hold otherwise would allow the prosecution to withhold evidence favorable to the accused by simply destroying it prior to trial without facing any sanctions. *See,* 20 Duke L Rev 644 (1971).

The holding of *Brady* that only material evidence favorable to the accused must be disclosed has resulted in a great deal of confusion. *See,* 40 U Chi L Rev 112 (1972). The problems arise in determining what is favorable material and who makes these crucial decisions. Under Oregon law it has generally been required that the defendant make some showing that the evidence sought to be disclosed will be favorable to his case. *See, Hanson v. Cupp,* 5 Or App 312, 484 P2d 847 (1971); *State v. Jones,* 18 Or App 343, 525 P2d 194, Sup Ct *review denied* (1974). The difficulty inherent in requiring the defendant to make

some showing of favorableness when he does not have the evidence in the first place is even more acute where the evidence has been destroyed. The crux of the problem is that only the prosecution, the defendant's adversary, has any information regarding the destroyed evidence. The procedure often applied of having the trial judge make an in camera inspection to determine favorableness after some showing by the accused that the evidence may be favorable to him is not possible where the evidence has been destroyed.

■ Because of the destruction of the questioned "lifts," we are forced to choose between two alternatives: dismissal, and overruling defendant's contention, knowing that there is some possibility, however slight, that the destroyed evidence would have been favorable. However, because of the strong showing that the "lifts" were useless and of doubtful materiality, we reject defendant's assignment of error because his argument is based on pure speculation. First, we are asked to assume that Officers Zion and Rice were both mistaken that the lifts were useless, which is highly unlikely given the 27 years of experience between them. Next, we are asked to assume that the newly uncovered print would not be of one of the victims or some other expected person. Then, defendant argues that this unexplained print might raise a reasonable doubt in the minds of the jurors. We disagree. Even assuming some of the prints were identifiable and not of someone known, another print at the scene does not explain the presence of defendant's prints near the bodies, nor the other evidence pointing toward him as the perpetrator. The trial court was correct in refusing to dismiss the indictment on this ground.

■ Defendant's third assignment of error, that there was insufficient evidence for the case to go to the

jury, likewise cannot be sustained. There was more than sufficient evidence to take the case to the jury.

■ Defendant contends that it was error for the trial court to give a felony murder instruction because there was insufficient evidence that the murders were committed in the course of a burglary. We disagree. There was ample evidence that the murders were committed during the course of a burglary. A neighbor testified that he heard the sound of breaking glass early on the morning of the murders, and the glass in the victims' garage door was found by the police investigators to be broken. Also, a wallet and two purses without any money in them were found in the house, one with its contents strewn across a table. This evidence, plus that listed in the discussion of defendant's third assignment of error, is sufficient to justify giving a felony murder instruction. *See, State v. Hazelett,* 8 Or App 44, 492 P2d 501 (1972).

Reversed and remanded for a new trial.