Argued August 19, affirmed September 13, reconsideration denied
October 20, petition for review denied November 16, 1976

STATE OF OREGON, *Respondent,*
*v.*
TIMOTHY PATRICK THURSTON,
*Appellant.*
(No. C 75-09-2944 Cr, CA 5870)
554 P2d 614

*J. Marvin Kuhn,* Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Lee Johnson, Attorney General, Christopher J. Fox, Certified Law Student, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton and Lee, Judges.

LEE, J.

**LEE, J.**

Defendant appeals his conviction of murder (ORS 163.115) and robbery in the first degree (ORS 164.415). His appeal is premised on the contention that evidence of other crimes was improperly admitted at trial.

On May 19, 1975 the U & I Tavern, located in Portland, was robbed; the time of the robbery was just after midnight. There were two robbers, both unmasked white men. The shorter of the two men appeared to be the older of the two, wore glasses and a sports cap, had a goatee and mustache, carried a handgun, and did most of the talking. The taller, and younger, of the two men was carrying a pillow case, which was used to carry the loot.

When the robbers entered, the gunman ordered the bartender to hand over the money from the till; she complied. The gunman ordered the bartender's friend to throw his wallet on the table, which he did.

The only other person in the bar was a patron. The gunman demanded his money; the patron said, "Go to hell. You are not getting it." After further argument the gunman killed the patron with a shot from his handgun. The robbers then departed without taking the patron's money. The bartender's friend identified the defendant as the gunman.

Defendant objected to admission of evidence of three other robberies.

The first of these robberies occurred at another Portland tavern, the Trolley Inn, on May 6, 1975; the time was shortly after midnight. The robbers were two unmasked white men; both wore big "floppy" hats. The older, and shorter, man had a goatee and mustache, carried a handgun, and did most of the talking. Neither robber wore glasses. The gunman's cohort did not appear to be carrying anything, but he collected the money. The tavern patrons were ordered to put their wallets and their hands up on the bar. In addition to the

wallets taken, the till was also robbed. Five people were in the tavern that evening when the thieves entered. Two eyewitnesses identified the defendant as the gunman.

At about 10:10 p.m. on May 12, 1975, two unmasked white men robbed another Portland tavern, the Wigwam. Both robbers wore large wide-brimmed hats. The gunman carried a handgun, had a goatee and mustache, wore glasses and gave the orders. The gunman ordered patrons to put their wallets on the bar; they were collected (along with the money from the till) by the other man who was holding a bag. A total of seven people were present when the robbers entered the tavern. Two eyewitnesses identified the gunman as the defendant.

Later on May 12, 1975, at about 11 p.m., two unmasked white men robbed another Portland tavern, the Neighborhood Inn. One of them had a handgun, gave the orders, wore a "big, floppy—big brimmed hat," and sported a goatee and mustache. The other man carried a pillow case in which was put money from the till and a patron's wallet. One of the witnesses who had a better look at the gunman than he did at the gunman's cohort, said: "* * * Well, the one with the gun looked taller." A total of three people were in the tavern when the intruders entered. One of the eyewitnesses identified the defendant as the gunman.

In *State v. Hockings,* 75 Adv Sh 3802, 23 Or App 274, 542 P2d 133 (1975), Sup Ct *review denied* (1976), we discussed an exception to the rule that evidence of other crimes is inadmissible and said:

> "[t]he identity exception permits proof of the defendant's prior crimes to prove the identity of the perpetrator where the prior crime and the crime for which defendant is presently on trial are so nearly identical in method as to earmark them both as being his handiwork. *State v. Manrique,* [271 Or 201, 531 P2d 239 (1975)]; McCormick, [Evidence 447, § 190 (2d ed 1972)]. Our Supreme Court considered the scope of this 'identity' exception in *Manri-*

*que,* supra at [207], and held that this exception is limited to situations where the two crimes were

"'* * * committed "by the use of a novel means or in a particular manner," ' so as to provide a proper basis for the inference that the person who committed the other crime was the same person who committed the crime for which he is being tried. [Citing cases.]" *State v. Hockings,* 75 Adv Sh 3802, 3803-04, 23 Or App 274, 542 P2d 133 (1975), Sup Ct *review denied* (1976).

In *Hockings,* the defendant was on trial for a quadruple murder. The state introduced evidence of a burglary which had the following elements in common:

"* * * (1) both were of occupied residences; (2) both entries apparently were made through garages; (3) both were committed in the early morning hours, near dawn; (4) both involved leaving the perpetrator's car near the scene; (5) both involved situations where defendant had been drinking; (6) both involved relatively minor actual thefts; and (7) both involved only minimal efforts by the perpetrator to hide his face from the view of those in the neighborhood." 75 Adv Sh at 3804.

Significant dissimilarities were the length of time between the offenses—two years and three months—and the amount of violence involved in each. The *Hockings* factors were a combination which might occur many times in a two-year period.

Each case will necessarily rest on its own facts. Each particular combination of factors must be evaluated to determine if the times, places and circumstances of the crimes are so "nearly identical" as to "earmark" the defendant.

In *State v. Fuston,* 7 Or App 436, 490 P2d 1024 (1971), Sup Ct *review denied* (1972), the defendant was accused of robbing a supermarket on June 11, 1970. Evidence was introduced which identified the defendant as the perpetrator of other robberies occurring on June 18 and May 1, 1970. We upheld the admission of evidence of other crimes under the identity exception, noting that

"* * * [a]ll businesses robbed were supermarkets; all

robberies were staged by two men a few minutes before 9 p.m. closing; the taller man wore dark glasses and was armed with a pistol; he accosted the person whom he considered was in charge of the supermarket, announced that it was a 'holdup' and took command; the shorter man was pushing an empty grocery cart, then donned a stocking mask just prior to the actual robberies; the victims were confined in a semi-secure room at the rear of the market—in two instances a cooler room, the other a compressor room; in all robberies the taller man directed the removal of the money from the safe. This was more than enough." 7 Or App at 440-41.

The identity exception was also allowed in *State v. Sterling,* 15 Or App 425, 516 P2d 87 (1973), Sup Ct *review denied* (1974), which involved cases of double rape.

■ The instant case is closer to *Fuston* and *Sterling* than to *Hockings.* In all four of the robberies the robbers were two unmasked white men; one with a mustache and goatee carrying a handgun and giving the orders, and the other collecting the money. Each robbery took place at a tavern when few people were present. In each case, the robbers sought the same things—wallets and money from the till. All of the robberies were within a two-week period; all occurred within about an hour of the same time of day.

A detective from the Portland Police Bureau testified at the trial that there were 54 commercial robberies in the Portland area during May 1975; only five of them were tavern robberies; four of the five were committed by two white males: The Trolley Inn, the Wigwam, the Neighborhood Inn, and the U & I.

The evidence of the other crimes was admissible because of the degree of similarity ascertainable from the common factors.

Affirmed.