# STATE OF OREGON, *Respondent,*

*v.*

# COLIN JOSEPH HOCKINGS, *Appellant.*

## (No. C 74-04-0993 Cr, CA 6553)

562 P2d 587

Phillip M. Margolin, Portland, argued the cause for appellant. With him on the brief were Nash & Margolin, Portland.

W. Michael Gillette, Solicitor General, Salem, argued the cause for respondent. With him on the brief was James A. Redden, Attorney General, Salem.

Before Schwab, Chief Judge, and Tanzer and Richardson, Judges.

RICHARDSON, J.

## RICHARDSON, J.

Defendant appeals his conviction by a jury of four counts of murder. The convictions arose from the killing of a married couple and two young neighbor boys who were staying in their home. Defendant had previously been convicted of the crimes but was retried following reversal of his convictions by this court. *State v. Hockings,* 23 Or App 274, 542 P2d 133 (1975), Sup Ct *review denied* (1976).

Defendant claims the court erred (1) in refusing to suppress fingerprint evidence or dismiss the indictment on the ground the state destroyed some of the fingerprint evidence found at the death scene; (2) in allowing evidence the defendant attempted to buy some marijuana and used marijuana the night before the crime; and (3) in giving an instruction on felony murder based on commission of a burglary.

The murders occurred sometime between 6:30 and 7:15 a.m. in the home of the married couple who were two of the victims. The investigating officers made 87 "lifts" of possible fingerprints in various parts of the house, some of the lifts were identified as the fingerprints of the defendant. In subsequent statements to the police he denied ever being in the victims' house.

The "lifts" taken were categorized in two groups: those having identifiable characteristics which could be matched to human fingerprints and those having no such characteristics being simply watermarks or grease spots. Of the 87 "lifts" 62 were destroyed by the sheriff's office as being useless for fingerprint comparison purposes. The remaining 25 lifts were identified as fingerprints left by specific persons including the defendant.

In his first assignment of error defendant claims some of the lifts taken at the crime scene were erroneously destroyed without allowing the defendant to examine them. He argues that at least six of the 62 lifts eventually characterized as useless watermarks

or grease spots had been compared with known finger-print impressions taken from specific persons, imply-ing they possessed identifiable characteristics enabl-ing their use as fingerprint evidence. Defendant con-cluded that these six prints might show that someone other than defendant was in the house where the murders took place and would tend to produce a reasonable doubt as to defendant's guilt.

■ Defendant asserts two bases for his argument that the lifts should have been supplied to the defendant. He asserted the same two contentions in his first appeal, *State v. Hockings, supra.* First, he contends discovery of the lifts is required by ORS 135.815. In the first *Hockings* appeal we dismissed this contention holding that the lifts were not included in the subject matter of the discovery statute. We adhere to that ruling.

■ Second, defendant contends the state must supply this evidence under the rules announced in *Brady v. Maryland,* 373 US 83, 83 Sup Ct 1194, 10 L Ed 2d 215 (1963). In the first *Hockings* appeal in discussing the application of *Brady* we said:

"Because of the destruction of the questioned 'lifts,' we are forced to choose between two alternatives: dismis-sal, and overruling defendant's contention, knowing that there is some possibility, however slight, that the de-stroyed evidence would have been favorable. However, because of the strong showing that the 'lifts' were useless and of doubtful materiality, we reject defendant's as-signment of error because his argument is based on pure speculation. First, we are asked to assume that Officers Zion and Rice were both mistaken that the lifts were useless, which is highly unlikely given the 27 years of experience between them. Next, we are asked to assume that the newly uncovered print would not be one of the victims or some other expected person. Then, defendant argues that this unexplained print might raise a reason-able doubt in the minds of the jurors. We disagree. Even assuming some of the prints were identifiable and not of someone known, another print at the scene does not explain the presence of defendant's prints near the

bodies, nor the other evidence pointing toward him as the perpetrator. * * *" 75 Adv Sh at 3810, 23 Or App at 286.

■ Under the holdings of Oregon cases interpreting the rule of *Brady* the defendant is required to make some showing that the evidence sought to be discoverable will be favorable. *State v. Hockings, supra; State v. Jones,* 18 Or App 343, 525 P2d 194, Sup Ct *review denied* (1974); *Hanson v. Cupp,* 5 Or App 312, 484 P2d 847 (1971). This showing must be sufficient to remove the assertion of prejudice from mere speculation. In this context defendant would be required to show the destroyed lifts contained identifiable characteristics that would make them viable as fingerprint evidence and that if he had them they would constitute evidence favorable to him. In the first *Hockings* appeal we held he had failed to meet this burden.

■ Although the defendant went into more detail in the suppression hearing prior to the second trial as to the process by which the lifts were compared and purged, the evidence presented at the two trials is substantially the same. The sheriff's deputies who worked with the fingerprint evidence maintained the 62 destroyed lifts were useless for fingerprint comparisons and offered an explanation of the apparent inconsistencies in their reports. The defendant offered evidence and analysis of the various investigative reports to show their testimony was not correct and that six identifiable prints were destroyed. After hearing evidence for two days on the motions to suppress or dismiss the court made the following finding:

"1. By a preponderance of the evidence it has been shown that the 62 lifts destroyed contained no ridge characteristics or evidentiary value."

This finding on disputed facts derived from conflicting evidence we will not disturb on appeal if the evidence will sustain the findings. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968); *State v. Fisher,* 5 Or App 483, 484 P2d 864 (1971). The trial court resolved the conflict in

the evidence adverse to defendant; there was sufficient evidence to sustain the finding. We arrive at the same conclusion as we did on defendant's first appeal that the motion to suppress the fingerprint evidence or dismiss the indictment was properly denied.

The second assignment of error relates to testimony regarding defendant's activities on the night just prior to the murders. A witness was permitted to testify, over objection, that he attended a party where defendant was present. Around midnight the witness, defendant and two other men left the party in defendant's car. The witness testified:

> "First we went to the store, bought a bottle of wine, then we went to a guy's house to try and score some pot.
> " * * * * *
> "I mean purchase an ounce of marijuana."

They were unsuccessful in purchasing any marijuana and went to the witness' apartment and then returned to the party. The witness testified there were about 25 people at the party and some of them were smoking marijuana, but he could not tell if defendant used any of the drug. He further testified that he and defendant left the party at approximately 5 a.m. and went to the witness' apartment. Shortly thereafter the witness went to bed and the defendant left.

Defendant contends statements about marijuana were evidence of prior crimes which is generally inadmissible, and that the evidence does not fall within any of the exceptions to that rule. *State v. Manrique,* 271 Or 201, 531 P2d 239 (1975); *State v. Hockings, supra.* Since the evidence was not relevant, he argues, it merely portrayed him as a bad character in the eyes of the jury.

■ When approaching the question of admissibility of "other crime" evidence courts often state as a rule that this evidence is inadmissible unless it comes under one of the many exceptions to that particular exclusionary rule. To state such a general rule masks the complete

progression of analysis in determining admissibility. It is more proper to first determine if the proffered evidence is relevant, without regard to its character, and then determine if there is some recognized exclusionary rule in the law of evidence which would nevertheless keep it out. The so called rule and its supposed exceptions are merely means of analyzing the relevance of the proffered evidence. It thus appears the rules and exceptions regarding other crime evidence are merely special aspects of the broad general problem of relevancy courts constantly face. *State of Oregon v. Long,* 195 Or 81, 244 P2d 1033 (1952). If the state establishes the evidence is relevant the defendant must establish that it has prejudicial impact which outweighs the probative value that inheres in relevant evidence. *See State v. Manrique, supra; State v. Zimmerlee,* 261 Or 49, 492 P2d 795 (1972); *State v. Harrison,* 253 Or 489, 455 P2d 613 (1969); *Trook v. Sagert,* 171 Or 680, 138 P2d 900 (1943). As the Supreme Court stated in *State v. Manrique:*

> "The fundamental rule of evidence is that in order to be admissible evidence must be relevant, i.e., have some probative value to prove some issue in a case, and that all relevant evidence is admissible unless it falls within one of the so-called 'exclusionary' rules of evidence. * * *" 271 Or at 205.

It may be noted the evidence must be relevant to establish some fact or inference the state is entitled to prove. For example, the state is not entitled to show the defendant has a propensity to commit a crime because he has been involved in other criminal activity or that he probably committed the crime because he is a person of general bad character. But the fact the evidence may tend to show these characteristics does not make it inadmissible if the evidence is also relevant and probative of some fact the state is entitled to show. The issue then becomes whether the probative value incorporated in legitimate relevancy exceeds the inflammatory nature of the other inferences the evidence may disclose.

[ 145 ]

■ In this case the state argues the evidence was relevant to complete the picture of defendant's activities leading up to commission of the crime. The evidence connecting defendant with the murders was circumstantial. Defendant had, in a statement to the police, claimed he was home implying he could not have committed the murders. It was necessary for the state to establish he was not at home as claimed but was out in the general area of the crime scene at a time when the murders were committed. In accomplishing this task it is permissible for the state to show defendant's activities for the evening leading up to the killings. If the state is left with showing only that the defendant left the witness' apartment at 5 a.m. the jury might well wonder what he was doing away from home where he had claimed to be at that hour and what events led him to the witness' apartment at that time. In order to make the evidence of defendant's whereabouts at 5 a.m. probable and credible the state should be able to establish background information. We quoted with approval in *State v. Raiford,* 7 Or App 302, 490 P2d 1036, Sup Ct *review denied* (1971), a statement of this principle by the Alaska Supreme Court in *McKee v. State,* 488 P2d 1039, 1041 (Alas 1971):

> "An eye witness to an event should be permitted to testify in a natural manner about what he observed. This ordinarily includes such background facts as where the witness was, how he happened to be there, and what interrelationship he may have had with other persons present at the event about which the witness testifies. Otherwise the testimony of the witness may seem distorted, improbable, or incredible to some degree. To strip away such background evidence may well result in an artificial or false picture of what occurred. * * *"

The fact defendant attended a party starting at approximately 8 p.m., left at midnight in the company of three friends to buy some wine and returned to the party where alcoholic beverages were being consumed is not challenged by defendant as being irrelevant. The portion of the background evidence concerning

marijuana does not become irrelevant simply because it may tend to show defendant's possible involvement in an unrelated crime. The Supreme Court succinctly stated the premise:

"With equal precision this court has said that a defendant cannot exclude evidence by making his actions criminal where the evidence would be admissible if his act was lawful. * * *" *State of Oregon v. Long, supra,* at 113.

Stated another way "* * * a party cannot be required to 'sanitize' his evidence by deleting background information to the point that the evidence actually presented seems improbable or incredible to some degree. * * *" *State v. Remington,* 15 Or App 170, 515 P2d 189 (1973), Sup Ct *review denied* (1974); *See also State v. Williams,* 16 Or App 361, 518 P2d 1049, Sup Ct *review denied* (1974); *State v. Seay,* 8 Or App 514, 495 P2d 41 (1972). We find the evidence was relevant to show the background information incident to a full understanding of the evidence and the weight of testimony concerning defendant's whereabouts.

Such evidence being relevant the next inquiry in the admissibility analysis is whether it has prejudicial aspects outweighing its probative value. In this inquiry defendant is aided by the general recognition of courts that evidence of other crimes tends to prejudice the defendant by implying he has criminal propensities or is a person of bad character. Determination of such prejudice attendant on the evidence cannot be made in a vacuum it must be determined in the context of the trial. In balancing the probative value and prejudicial tendencies of other crime evidence the following are relevant:

"* * * [T]he actual need for the other-crimes-evidence in the light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that the other crimes were committed and that the accused was the actor, and the strength or weakness of the other-crimes-evidence in supporting the issue, * * * the degree to which the jury will probably be

roused by the evidence to overmastering hostility.' McCormick, Evidence 326, 332, § 157 (1954)." *State v. Lehmann,* 6 Or App 600, 488 P2d 1383 (1971); *State v. Williams, supra.*

In this case the evidence linking defendant with the murders was circumstantial, consequently, it was of primary importance to place the defendant near the crime scene at the critical time. In a circumstantial case the weight attaching to testimony proving the links in the chain of circumstances is critical. The believability of a witness is thus as much an issue as the elements of the crime. As we have determined, the background information was relevant to the issue of believability of the witness' testimony.

Defendant argues the statement by the witness that the men were trying to purchase an ounce of marijuana shows the defendant and his companions were attempting to commit a felony. ORS 167.207. This statement, rather than an attempt to brand the four men as potential felons, was more probably a recognition by astute marijuana users that possession of an "ounce" reduces their liability for felony prosecution and places them at most in the category of committing a violation under ORS 167.207(3). We feel it would be viewed in the same light by the jury.

The evidence that defendant was seeking to purchase a personal supply of marijuana and may have used marijuana did not prejudice him by portraying him as a criminal or as having bad character given the common and frequent use of this drug in our contemporary society. ORS 167.207(3) is a legislative recognition of this fact. The potential of this evidence to arouse the jury to "overmastering hostility" is negligible.

*State v. Manrique, supra,* cited by defendant, involved the sale of heroin and not the attempted purchase or use of marijuana. The different character of the drug heroin and its view in modern society makes this distinction material in determining the

prejudicial impact of the marijuana evidence in this trial. In other words the sale of heroin and the attendant public stigma of "drug pusher" is not analogous to the purchase of a personal supply and use of marijuana in its inflammatory characteristics.

The marijuana evidence was not emphasized by the prosecutor and his questioning of the witness did not dwell on the marijuana evidence. Defendant on cross-examination asked the witness questions regarding defendant's use of marijuana on prior occasions and whether defendant used the drug at the party. The witness testified on cross-examination he was unable to say the defendant used any marijuana that night.

In the context of this case where the evidence, although circumstantial, was substantial and convincing, where evidence connecting defendant with "other crimes" was minimal, where the marijuana evidence did not form an important link in the state's chain of evidence and where the tendency of the "other crime" evidence to inflame the jury is negligible, we find its probative value is not outweighed by its prejudicial aspects. Accordingly it was not error to admit the challenged evidence.

■ Over defendant's objection the court instructed the jury on felony murder and burglary in the first degree pursuant to the state's theory that the murders were committed in the process of a burglary. Defendant assigns this as error contending there was not sufficient evidence from which a jury could find there was a burglary. This same assignment of error was raised in defendant's first appeal. We held that "* * * [t]here was ample evidence that the murders were committed during the course of a burglary. * * *" The state argues the same evidence was presented in this trial and the instruction remains permissible. Defendant points to additional evidence produced in this trial that there was $50 found in the house after the murders and that a deputy sheriff who investigated the crime scene testified there was no indication of the

[ 149 ]

normal signs of burglary in the house. From this the defendant argues any conclusion a burglary was being committed would be based on pure speculation.

Comparing this additional evidence with that noted in the first *Hockings* appeal it still remains a jury question as to whether the elements of burglary were satisfied. There was sufficient evidence from which the jury could find the murders were committed during a burglary and thus the instructions were proper.

Affirmed.