Argued and submitted July 10, affirmed December 1, 1981

# STATE OF OREGON,
*Respondent,*

*v.*

# ALLENY LAVALLE ESHMON,
*Appellant.*

## (No. C80-09-33220, CA A20212)

636 P2d 992

Marianne Bottini, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Buttler, Presiding Judge, Joseph, Chief Judge, and Warren, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

In this appeal from two convictions for robbery in the first degree, defendant contends that (1) the trial court improperly admitted evidence of both robberies in the separate trials on each robbery charge and (2) the prosecution's eyewitness identification testimony should have been suppressed.

At about 7:45 on the evening of June 29, 1980, three men robbed the Kentucky Fried Chicken restaurant at 1841 North Lombard in Portland. At about 9:45 that same evening, the International House of Pancakes at 422 N.E. Multnomah in Portland was robbed by four men. Witnesses at both restaurants described the robbers as black men in their twenties, one of whom was wearing a hair net. In both robberies handguns were used, and the employees and patrons were confined in the restaurant coolers. The persons in charge of both restaurants (the manager of the Kentucky Fried Chicken and the acting manager of the International House of Pancakes) were brought out from the coolers and, under threats of being shot, were told to open the restaurants' safes.[1] Both were returned to the coolers before the robbers left.

About two weeks later, Portland police showed eyewitnesses to each robbery photographic "throw-downs," which consisted of three groups of six colored photographs of black males of approximately the same age and general appearance. Each group was mounted on the inside of a file folder, with equal-sized rectangles cut out to reveal the photographs. Each folder contained a photograph of one of the three robbery suspects — defendant, Danny Jones and Charles Strong. (A photograph of the fourth suspect from the pancake house robbery was not included.) If the folders were opened, it could have been seen that three of the photographs were Polaroid pictures and were of larger overall dimension than the other pictures. However, the scale of the subjects in all of the pictures was the same.

---

[1] The top half of the safe at the Kentucky Fried Chicken restaurant was opened by the manager; she could not open the bottom half. The robbers at the International House of Pancakes first ordered the cook to open the safe. When he could not, they locked him in a linen closet and ordered the assistant manager to open it. She, too, was unsuccessful.

Defendant's photograph and that of Charles Strong were selected by one witness to each robbery. Three of the four witnesses — one from the fried chicken establishment and two from the pancake house — recognized Danny Jones' photograph.

Defendant was charged in one indictment with two counts of robbery in the first degree. The trial court granted defendant's motion to sever the charges for trial but denied both his motion to exclude evidence about one robbery at the trial on the other and his motion to suppress the photographic identification testimony of the four witnesses.

The two trials were substantially identical except for the order of the witnesses, with the state calling the four eyewitnesses and the two police officers who interviewed them. Defendant put on no witnesses. Three of the eyewitnesses made an in-court identification of defendant; however, one of these witnesses could not match defendant with his photograph from the throw-down. The fourth witness had been able to identify only Danny Jones from the throw-downs and testified that he never had a "good look" at either of the two other robbers. Defendant was found guilty of robbery in the first degree by a jury at both trials.

■ Defendant contends that the photographic throw-downs unconstitutionally differentiated the target suspects from others in the layouts and thereby tainted the in-court identifications of defendant. An examination of the throw-downs does not support that contention. The three Polaroid photographs have a somewhat shinier finish than the others. However, this difference is minimal when compared to the differences among all of the photographs.[2] Furthermore, each identification witness testified that the folders were not opened (which would have revealed the larger size of the Polaroid photographs) until *after* the identifications were made. We find nothing that was impermissibly suggestive in the photographic throw-downs.

---

[2] The backgrounds in the photographs differ in color and in the type of backdrop. Some of the photographs show police identification numbers. Some of the subjects are looking directly into the camera; others are not. *See State v. Wise* 54 Or App 700, 635 P2d 1374 (1981).

■ Defendant also contends that the state should not have been allowed to put in evidence of both robberies at both trials. Evidence of criminal activity other than that for which a defendant is being tried is inadmissible, unless it falls within one of several well-recognized exceptions and is shown to have probative value greater than its prejudicial effect. *State v. Manrique,* 271 Or 201, 531 P2d 239 (1975); *State v. Knutson,* 45 Or App 1051, 609 P2d 922 (1980). The state introduced the evidence of both robberies under the "identity" exception. Evidence of "other crimes" is allowed for the purpose of identifying a defendant when the other crimes and the crime at issue were

> "* * * committed 'by use of a novel means or in a particular manner,' so as to provide a proper basis for the inference that the person who committed the other crime was the same person who committed the crime for which [defendant] is being tried."

*State v. Manrique, supra,* 271 Or at 207. "Other crimes" evidence is also admissible when there is

> "* * * such a concurrence of common features [among the crime charged and the other criminal acts] that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations."

*State v. Zimmerlee,* 261 Or 49, 53, 492 P2d 795 (1972); *State v. Sterling,* 15 Or App 425, 428-29, 516 P2d 87 (1973), *rev den* (1974).

■ Defendant argues that the relevance of the separate robberies for identification was "minimal," because there were witnesses present during each robbery and

> "[t]he only identification question involved accuracy of their observations, given a possibly impermissible throw-down process."

This amounts to saying that the state had no need to introduce evidence of the separate robberies because there were witnesses who could identify defendant at each trial. Although it is true that evidence of the separate robberies did nothing to rebut defendant's claim that the throw-down process was impermissibly suggestive, it was nonetheless relevant to show that defendant was one of the perpetrators of the crime for which he was being tried. The identity of

defendant as one of the robbers was indeed an issue at trial; defendant made it so by challenging the accuracy of the eyewitnesses' memories and their observations at the time of the robberies.[3] Thus, evidence of both robberies was neither simply cumulative nor superfluous.[4]

■    The conclusion that evidence of both robberies was relevant at each trial is premised on our recognition that the similarities between the two crimes were sufficient to provide a basis for the inference that the same men committed both robberies. *See State v. Thurston,* 26 Or App 753, 554 P2d 614, *rev den* 276 Or 555 (1976). The only apparent dissimilarity is that in the later crime there was an additional robber That is not enough to invalidate the inference.[5]

---

[3] At the close of the first trial, defense counsel argued:

"Ladies and Gentlemen, I submit to you that the fundamental ingredient that is missing in this case, the basic reasonable doubt is identity because, as I have said to you, there is no denying that somebody committed these robberies. * * * But the real point you have to decide * * * you have to believe that it was [defendant] in order to return a guilty verdict."

In his closing argument at the second trial, he argued:

"And the standard that you are going to hear more about from His Honor is reasonable doubt. Do you have a reasonable doubt that [defendant] was the man involved in these crimes? And I submit, ladies and gentlemen, that the evidence, the inconsistencies, the failure of the people who were involved to make any sort of meaningful identification or meaningful statement to the police officers after it happened, and the way the plaque * * * with [defendant's] picture in it, all of these cast a reasonable doubt."

We note that defendant's claim that the prosecution's identification process was suggestive does not *ipso facto* put identity into issue. Such a claim may simply be a due process claim and imply only that the state did not treat defendant fairly. However, because defendant did more than simply challenge the identification procedure on due process grounds by attempting to raise a reasonable doubt that defendant committed the crimes, identity was an issue.

[4] We do not understand defendant's claim to be that the three *other* persons present at each robbery, who did not testify, could have provided further identification testimony, thereby making the "other crimes" evidence unnecessary. Assuming *arguendo* that those others were eyewitnesses and available for trial, there is no reason to believe that their testimony would be immune to the same challenges made by defendant to the witnesses who did testify. Thus, we cannot conclude that the only purpose of the other crimes evidence was to prejudice defendant's case. *Cf. State v. Zimmerlee,* 261 Or 49, 492 P2d 795 (1972) (where the state has a non-prejudicial way to prove its case, "other crimes" evidence which is prejudicial to defendant ought not to be admitted).

[5] Defendant maintains that the robberies are dissimilar in that one occurred at a pancake house and the other at a fried chicken take-out. Although we

Having determined that the "other crimes" evidence was relevant, we must next decide whether the probative value of the evidence outweighed its tendency to persuade the jury that defendant was a "bad man" and, thus, guilty of the robbery for which he was being tried. *State v. Manrique, supra,* 271 Or at 205. The evidence of the other robbery went, not to the propensity of defendant to commit robberies, but to his identity as a perpetrator of two markedly similar robberies in the same city on the same night. The evidence of the other robbery showed, not that he was a "bad man" who should be found guilty regardless of the evidence on the charge for which he was being tried, but that he was the *same* man who committed both robberies.

Affirmed.

---

recognize and appreciate the differences between fried chicken and pancakes, given the similarities between the methods of perpetration of both robberies, the differences between the victimized establishments' menus are only of gastronomical significance.