Argued and submitted September 16, 1981, affirmed March 22, 1982

STATE OF OREGON,
*Respondent,*
*v.*
ROBERT LARRY GUINN,
*Appellant.*

(Nos. 121,176 & 121,177,
CA A20834 & A20835)
(Cases consolidated)

642 P2d 312

J. Marvin Kuhn, Chief Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

William F. Gary, Solicitor General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Thomas H. Denney, Assistant Attorney General, Salem.

Before Richardson, Presiding Judge, Joseph, Chief Judge, and Van Hoomissen, Judge.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant appeals his convictions for assault in the first degree and assault in the second degree, assigning as error the denial of his motions to dismiss the charges and to suppress evidence. Defendant's motions were based on a claimed violation of his constitutional and statutory rights to obtain exculpatory evidence in the possession of the state.

Defendant was an inmate at the Oregon State Penitentiary when two prison guards were assaulted by an inmate wielding a metal pipe. Waterman, one of the guards assaulted, testified he was on the fourth tier of the prison cell block preparing to lock the inmates in their cells. He was accosted by two inmates; one had an ice pick-type knife and the other had a metal pipe. Waterman later positively identified defendant as the inmate with the pipe. The other inmate ordered Waterman to give him the cell block keys. When Waterman attempted to grab the inmate, defendant struck him with the pipe two or three times. He fell down the stairs to the landing on the third tier. As he rolled over onto his back, defendant was standing over him with the pipe and struck him two or three times. Waterman grabbed defendant's pants leg. Beers, the victim of the other assault, testified that he heard a warning whistle and ran to the third tier of the cell block. He saw defendant striking Waterman with a metal pipe. He grabbed defendant, who turned and struck him two or three times with the pipe. Defendant was finally subdued. Another guard who was on the fourth tier witnessed the assault on Waterman and identified defendant as the assailant with the pipe.

Defendant testified that he was on the third tier and returning to his cell on the fourth tier when he heard a loud commotion and saw Waterman lying on the landing on the third tier. He testified that he saw the feet, legs and hands of an inmate at the top of the stairs on the fourth tier. The inmate had an ice pick-type knife in his hand. Defendant stated he was concerned for his safety and picked up a metal pipe lying by Waterman's feet. He testified that when he was grabbed from behind, he turned and instinctively struck his attacker. He stated that as soon as he determined the person behind him was a guard, he

ceased struggling. Several inmates testified defendant did not strike Waterman.

Defendant was placed in an isolation cell, and his clothing was taken from him. At the hearing a prison official testified that defendant's clothing was not in possession of the penitentiary and that he assumed the state police had them. The state police officer in charge of the investigation testified that the clothing was not turned over to the state police. The pipe was taken by the state police and examined for fingerprints. No identifiable prints were found, because of the painted surface of the pipe. The state police crime laboratory disposed of the pipe after being informed by the Marion County district attorney that no criminal charges would be brought.

Defendant contends that he was entitled to examine the clothing and the metal pipe pursuant to ORS 135.815 and that the inability of the state to produce the requested items requires dismissal of the charges or suppression of any evidence relating to the metal pipe.[1] He also argues that his constitutional rights to due process of law and a fair trial were violated, and so dismissal or suppression is warranted under *Brady v. Maryland*, 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963).

■ When evidence in possession of the state is no longer available for discovery pursuant to the discovery statute, the issue is what sanction, if any, should be imposed pursuant to ORS 135.865. In *State v. Dyson*, 292 Or 26, 636 P2d 961 (1981), the court said:

"We hold that the trial court must always consider the presence or absence of prejudice in deciding what sanction to impose upon either party under the terms of ORS 135.865, but that the trial court is not necessarily precluded by an absence of prejudice from imposing upon either party the sanction of 'refus(ing) to permit the witness to testify, or refus(ing) to receive in evidence the material not disclosed,' as provided by the terms of that statute. * * *" 292 Or at 36.

---

[1] Defendant contends that the only appropriate sanction for failure to disclose his clothing would be dismissal. Suppression of evidence regarding the clothing would not benefit defendant, because he wished to show that the clothing had no blood on it and thereby to corroborate his testimony that he did not strike Waterman.

The trial court is given broad discretion in the choice of sanctions under ORS 135.865. *State v. Wolfe,* 273 Or 518, 542 P2d 482 (1975). We review the trial court's decision to determine if it abused its discretion under all the circumstances, including the presence or absence of prejudice to the party denied discovery.

■ The court was faced with limited alternatives by defendant's motion for statutory discovery. It could have dismissed the charge, granted defendant's motion to suppress any evidence regarding the pipe or clothing, or denied defendant's motion. Suppression of all evidence regarding the pipe would have emasculated the state's case. Before imposing extreme sanctions, which would effectively prevent prosecution of a charge, the court can properly consider the degree of prejudice to the defendant. *State v. Dyson, supra.* For the reasons set forth in our discussion of defendant's constitutional claims, we conclude that the prejudice to defendant, because the items sought were not available, was slight. In the context of the evidence presented during the hearing on defendant's motions and during trial, we conclude that the court did not abuse its discretion in denying defendant's requested sanctions for violation of his statutory right to discovery.

■ Defendant's constitutional ground for dismissal or suppression is based on *Brady v. Maryland, supra.* He contends that an examination of the pipe and his clothing would have produced evidence supporting his claim of innocence and that, because the evidence is not now available, his due process rights are violated and he is entitled to dismissal or suppression. Regarding the metal pipe, defendant argues:

> "Even though a state expert examined the pipe and found no fingerprints, who can say that another expert would not have found prints other than defendant's which would substantiate his claim of innocence? Defendant submits that analysis by an expert of his choice could have produced evidence which corroborated his claim of innocence."

Defendant does not contest the validity of the state's fingerprint analysis; he argues only that another fingerprint expert possibly could have found prints where the state had not.

In *State v. Hockings,* 29 Or App 139, 562 P2d 587, *rev den* 279 Or 301 (1977), *cert den* 434 US 1049 (1978), we said:

"Under the holdings of Oregon cases interpreting the rule of *Brady* the defendant is required to make some showing that the evidence sought to be discoverable will be favorable. *State v. Hockings* [,23 Or App 274, 542 P2d 133 (1975), *rev den* (1976)]; *State v. Jones,* 18 Or App 343, 525 P2d 194, Sup Ct *review denied* (1974); *Hanson v. Cupp,* 5 Or App 312, 484 P2d 847 (1971). This showing must be sufficient to remove the assertion of prejudice from mere speculation. * * *" 29 Or App at 143.

*Hockings* is factually similar to this case. Defendant was accused of murdering four people in a residence. The investigating officers made 87 "lifts" of possible fingerprints from the murder scene. The lifts were categorized in two groups: those having identifiable characteristics, which could be compared to known fingerprints and those having no such characteristics. The investigators destroyed approximately 62 of the lifts, because they concluded that those lifts were useless for fingerprint identification purposes. Defendant moved to dismiss the indictment or suppress all fingerprint evidence on the basis of the constitutional principle expressed in *Brady.* He contended that if he had the destroyed lifts, his expert could possibly identify a fingerprint of someone other than defendant who was not authorized to be in the residence, which would raise a reasonable doubt as to his guilt. We held that because defendant had failed to establish that the investigator's fingerprint analysis was wrong, and because his assertion that an exclupatory fingerprint could be found was mere speculation, he was not entitled to dismissal or suppression of all fingerprint evidence.

The same rationale is applicable here. Defendant has not contended that the state's fingerprint tests on the metal pipe were inadequate or invalid. In addition, his claim that another expert might be able to find identifiable prints on the pipe, and that if such prints were found they may be of an individual other than defendant, is speculative.

■ Defendant's motion for dismissal on the basis of the lost clothing he wore at the time of the assault is

premised on the assertion that, if he had the clothing for examination, he could determine if it had blood spatters on it. He presented a witness in the hearing on his motions who testified that based on the amount of blood at the scene, there in all probability would have been blood spatters on the assailant's clothing. He concluded that if defendant's clothing had no blood spatters, that would indicate defendant was not the assailant. The court denied defendant's motion to dismiss, but said that, if at trial the evidence showed a stronger possibility that examination of the clothing would produce exculpatory evidence, the ruling would be reconsidered. During trial defendant testified, and his testimony implied that there was no blood on his clothing. Two prison staff members saw defendant shortly after the assault and before he changed clothing. They both testified that there was no blood on his clothes. Consequently, the evidence defendant wished to show from an examination of his clothing was produced at trial and was available to support his theory of innocence.

We conclude, in view of all the circumstances, including the positive identification of defendant as the assailant, that he was not denied a fair trial because he did not have the clothing for examination.

Affirmed.