Argued September 18, reversed and remanded November 6, 1978,
reconsideration denied February 13, — Or App ——, — P2d ——,
Sup. Ct. review denied May 22, 1979, 286 Or 449

# STATE OF OREGON, *Appellant,*
## *v.*
# VIRGIL VALENTINE KETCHERSID, *Respondent.*
## (No. 77-4789, CA 10420)

586 P2d 119

Frederick A. Hugi, Assistant District Attorney, Eugene, argued the cause for appellant. With him on the brief was J. Pat Horton, District Attorney, Eugene.

Patricia Burnett, Certified Law Clerk, Salem, argued the cause for respondent. With her on the brief were Gary D. Babcock, Public Defender, and Thomas J. Crabtree, Deputy Public Defender, Salem.

Before Schwab, Chief Judge, and Johnson, Gillette and Roberts, Judges.

GILLETTE, J.

**GILLETTE, J.**

The State appeals from an order entered after an omnibus hearing which held that blood samples taken from defendant and testimony relating to the testing of his blood for alcohol content were inadmissible. Defendant has yet to stand trial on the charge of Manslaughter In The Second Degree.[1] The sole basis for the trial court's ruling was the failure of the State's criminalist to retain one of two graphs produced by the script chart recorder of the gas chromatograph.[2] We reverse.

In simple terms, the test procedure entails the insertion of a known amount of n-propanol and ethanol (alcohol) into the chromatograph. The machine produces a graph for this known standard. The blood sample of unknown alcohol concentration is also mixed with the same known amount of n-propanol. The chromatograph prints out a second graph based on this mixture. The ethanol content of the blood sample is determined from computations based on measurement and comparison of the peaks appearing on the graph. In the test conducted in this case, the examiner retained the defendant's blood sample[3] and the graph for the unknown mixture, i.e.,

---

[1] ORS 163.125(1)(a) provides:

"(1) Criminal homicide constitutes manslaughter in the second degree when:

"(a) It is committed recklessly; * * *."

[2] The Oregon Administrative Rules for the Health Division, Chapter 333, Exhibit I, contain the procedures used for the Gas Chromatography Method II. The exhibit indicates:

"Blood is diluted with an aqueous internal standard solution and the mixture is injected into a gas-liquid chromatograph. Alcohol and the internal standard are separated from the blood in the injector part and swept onto the column where separation occurs between the alcohol and the internal standard. At the detector, each compound produces an electrical current which is displayed on a strip chart recorder. The size of each peak is proportional to the amount of compound present."

[3] The blood samples are still available. There has been no affirmative showing that they cannot be retested. However, in view of our general

the mixture containing the defendant's blood. He could not produce the graph for the known standard.

The defendant relies on *Brady v. Maryland,* 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963), to uphold the trial court's order. *Brady* held that suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material to guilt or punishment, irrespective of the good or bad faith of the prosecution. We indicated in *State v. Michener,* 25 Or App 523, 550 P2d 449 *rev den* (1976) that

"* * * the *Brady* rule requires disclosure of material evidence where a defendant established some reasonable possibility, based on concrete evidence rather than a fertile imagination, that it would be favorable to his cause." 25 Or App at 532.

We held that the trial court properly suppressed the results of a breathalyzer test in *Michener* because defendant demonstrated that a meaningful analysis of the destroyed breathalyzer ampules was possible and that there was a reasonable possibility that an error occurred in the administration of the test. *See also State v. Reaves,* 25 Or App 745, 550 P2d 1403, *rev den* (1976).

Defendant contends that the missing graph would have helped to determine whether the gas chromatograph machine was functioning properly and whether the examiner's conclusion was correct. Defendant does not provide any facts or reasons why it might be inferred that the chromatograph was defective. Such an assertion is mere speculation as to a result. We recently faced and rejected an argument similar to defendant's in another factual context in *State v. Spada,* 33 Or App 257, 576 P2d 33, Sup Ct review allowed 283 Or 99 (1978). In *Spada* defendant was

---

finding that the trial court acted improperly in suppressing the results of the chromatograph, we need not place our holding on the fact of their continuing availability.

charged with a violation of the basic speed law and sought, among other things, the repair and maintenance records for the radar device that calculated his speed. Defendant argued the documents would be helpful in challenging the accuracy of his speed measurement. The trial court issued an order requiring the State to supply the information based on *Brady* and we reversed.

> "[Defendant] was given no facts or reasons to support a belief that the radar device was actually defective. At best, such evidence, if it exists, is at least as likely to indicate good operating conditions as bad. Therefore he has not made the showing of favorability as required under [*State v.*] *Koennecke,* [274 Or 169, 545 P2d 127 (1976)] and [*State v.*] *Hockings,* [29 Or App 139, 562 P2d 587 (1977), *cert den*— US —— (1978)]" 33 Or App at 260.

Defendant also contends that the graph possibly could have been used to impeach the State's evidence that the defendant was intoxicated. There are two answers to this assertion. Again, defendant has made no showing below or on appeal which indicates or even infers that his condition was other than that found by the expert examiner. Secondly, defendant will have the opportunity to fully cross-examine the State's evidence against him, including that which points to his intoxication, as well as present any testimony which suggests the contrary. The admission of the test results in no way precludes such a defense.[4]

The absence of the graph for the known standard may be used as argument by the defense going to the *weight* to be attached to the chromatograph evidence. However the trial court erred when it found that the graph's absence affected the *admissibility* of all evidence of the test results.

Reversed and remanded.

---

[4] It should be noted that the chromatograph operator runs no more than five unknown samples through the machine before a known mixture is injected. This procedure verifies the continuing accuracy of the testing process. The operator testified that he had no reason to believe there was any error in the test results.