Argued and submitted February 11, affirmed June 29, 1981

## STATE OF OREGON,
*Respondent,*

*v.*

## VIRGIL VALENTINE KETCHERSID,
*Appellant.*

## (No. 77-4789, CA 17186)

630 P2d 1312

Marianne Bottini, Deputy Public Defender, Salem, argued the cause for appellant. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Frederick A. Hugi, Assistant District Attorney, Eugene, argued the cause for respondent. With him on the brief was J. Pat Horton, District Attorney, Eugene.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant appeals his conviction by a jury verdict of manslaughter in the second degree. ORS 163.125. He assigns as error the denial of his motion to suppress the results of two blood alcohol tests and the denial of his motion for mistrial. This is the second appeal in this case. *See State v. Ketchersid,* 37 Or App 97, 586 P2d 119 (1978), *rev den* 286 Or 449 (1979).

The victim was killed when the motorcycle he was riding collided with a vehicle driven by defendant in June, 1977. The state's theory was that defendant drove recklessly and was under the influence of intoxicants. Following the accident, defendant was taken to a hospital for medical treatment. At the request of a police officer two samples of defendant's blood were taken, the first at 8:30 p.m. and the second at 9:29 p.m. The blood samples were tested for alcohol content by a state criminologist using a gas chromatograph. The tests showed a blood alcohol level of .15 percent and .14 percent respectively. Following the tests, the blood samples were properly stored under refrigeration.

The case was set for trial in February, 1978. A pretrial omnibus hearing was held on defendant's motions, including a motion to suppress the results of the blood alcohol tests. The blood samples were introduced by the state during the omnibus hearing. Defendant's motion to suppress was granted on the basis that the state's criminologist failed to retain one of the two graphs produced by the chart recorder of the gas chromatograph. The case did not proceed to trial, because the state appealed the order suppressing the blood test results. We reversed and remanded for trial. *State v. Ketchersid, supra.*

On remand, the new trial was scheduled for November 21, 1979. The blood samples had remained in the custody of the court and had not been refrigerated since their introduction in evidence at the first omnibus hearing in February, 1978. On defendant's motion, the blood samples were retested on November 11, 1979. The retest results of the two samples showed a blood alcohol level of .12 percent and .10 percent respectively. The state's

criminologist explained that the variation in test results was due to the fact that the blood samples had not been properly stored or refrigerated. Defendant presented evidence that without proper refrigeration an accurate blood alcohol test could not be made and that the retesting in November, 1979, would not accurately reflect the alcohol content of defendant's blood at the time the blood samples were taken. Defendant's witnesses testified he exhibited no signs of intoxication at the time of the accident. The state produced witnesses who testified that he did. Defendant moved to suppress the results of the blood alcohol tests on the ground that the blood samples could no longer be tested and he thus was deprived of a meaningful opportunity to rebut the results of the state's tests.

Defendant argues that he has demonstrated a reasonable possibility that the blood alcohol tests run by the state were inaccurate. *See, State v. Michener,* 25 Or App 523, 550 P2d 449, *rev den* 276 Or 211 (1976). He contends the evidence shows that a meaningful retest of the blood samples could have been made if they had been properly stored and refrigerated and the failure of the state to maintain the blood samples in a condition that would allow retesting requires that the test results be suppressed, pursuant to the rule in *Michener.*

■ ■ We conclude defendant was not deprived of an opportunity to conduct a meaningful test of the blood samples, and his motion to suppress was properly denied. Defendant contends *Michener* requires the state to maintain the blood samples in a testable condition until the prosecution is finally terminated. The essence of *Michener* is that defendant must be given an opportunity to replicate the scientific tests conducted by the state and if that opportunity is frustrated because the sample is not properly maintained, he is entitled to suppression of the test results if the proper showing is made. Defendant had such an opportunity.

The blood samples were taken in June, 1977, and were properly stored and refrigerated until introduced at the first omnibus hearing in February, 1978. During this period defendant could have requested retesting of the blood samples or have had retesting done by an expert of

his choice. Defendant did not avail himself of the opportunity for meaningful retesting during the approximately eight-month period before the blood samples were removed from refrigeration. He answered ready for trial in February, 1978, and sought suppression of the test results only on the basis of the missing gas chromatograph chart. During the hearing on the motion to suppress involved in this proceeding, defendant presented evidence that a properly stored and refrigerated blood sample can be accurately retested for at least one year and probably longer. Retesting of the blood samples would have been the most accurate and direct method of confirming or rebutting the state's blood alcohol evidence. Defendant failed to take the timely opportunity for retesting which was available to him and cannot now complain that his constitutional rights were violated.

In his second assignment defendant contends the court erred in denying his motion for mistrial or, in the alternative, in failing to give a cautionary instruction. The motion was made in response to testimony of an expert witness called by the state. The state introduced the results of the first blood alcohol test showing the two samples taken one hour apart to have an alcohol level of .15 percent and .14 percent respectively. The witness calculated the alcohol absorption rate from these two readings and testified that in his opinion, the alcohol level in defendant's blood at the time of the accident was .16 percent. He testified the two blood tests indicated that defendant had a slower than normal alcohol absorption rate. The prosecutor then asked what a slow dissipation rate would indicate. The witness responded that the most common reason would be a liver dysfunction. The prosecutor then asked:

"And if a person drinks over a long period of time to excess, what effect would you expect that to have on this liver?"

Defendant objected on the grounds that there was no evidence that defendant drank to excess and that the question was irrelevant. The objection was sustained. The prosecutor inquired of the witness: "What are the sources of liver dysfunction?" Defendant objected and moved for a mistrial on the ground that the question of the prosecutor, although unanswered, suggested to the jury that defendant was a

heavy drinker. The court ruled the evidence was irrelevant but denied the motion for mistrial and defendant's request for a cautionary instruction.

■ The same expert witness testified at length concerning the effects of alcohol on the human body. He testified that the objective manifestations of alcohol ingestion differ with individuals. He explained, without objection, that a person who is a heavy drinker is able to mask the subjective symptoms by developing a tolerance to the effects of alcohol. This was contrasted with an inexperienced drinker who would be unable to handle the effects of alcohol so that they would be easily observable. Defendant had presented evidence from witnesses who testified defendant exhibited no effects of alcohol ingestion. The state presented evidence that he did. It was the state's theory that the evidence regarding the ability of a heavy drinker to compensate for the effects of alcohol explained the testimony that defendant did not appear to be under the influence of alcohol. From this evidence, which was admitted without objection, the jury could infer that if defendant did not manifest objective symptoms of alcohol ingestion it was because he was a heavy drinker and had developed a tolerance to the effects of alcohol. Consequently, there was a basis in the properly admitted evidence for the jury to infer what defendant contends would be an impermissible inference from the questions of the prosecutor to which he had objected. We conclude the trial court did not abuse its discretion in denying the motion for mistrial and the request for a cautionary instruction.

Affirmed.